## LEVI WILLARD *versus* DANIEL WETHERBEE and others.

Individuals, when requested by the selectmen of towns to give an account on oath of their taxable property are bound to be ready to do it ; and if not ready when requested, it is their duty to prepare and carry to the selectmen such an account, otherwise they may be legally doomed.

A party who, in giving to selectmen an account of his taxable property, has been guilty of a fraudulent concealment of part of his estate may be legally taxed for the fraud without a hearing before the selectmen.

And when selectmen have taxed a party for such a fraud and an action is brought by him against them for over taxing him it is not necessary to their defence to shew that they had knowledge of the fraud when they made the tax.

When the admission of evidence upon a particular point is a surprise upon a party, it may be a good cause for granting him time to meet it, if asked at the trial ; but if delay be not then asked, the surprise will not be considered as a good cause for a new trial.

Where an administrator puts money, belonging to the estate of his intestate, out at interest, he is liable to be taxed for such portion of money as may on settlement belong to himself.

THIS was an action upon the case against the defendants, who were selectmen of the town of Swanzey in the year 1824, for taxing the plaintiff that year for $15000 money at interest and bank stock, when he in fact had and gave in to them only $2000.

The cause was tried here upon the general issue at May term, 1826, when it appeared that the defendants

in April, 1824, met the plaintiff at the shop of E. Page, in Swanzey, and requested him to give in his invoice. He offered to give in $2000 money at interest but when requested to give it in upon oath he refused, saying that he had not the necessary papers with him to enable him to do so and offering if they would go with him to his house, there to give in an account and make oath to it ; whereupon the selectmen put down $15000 money at interest and told him they should tax him for that sum. He was at the same time told that he might afterwards exhibit an invoice on oath to them, but he did not and they made no further application to him. At a time subsequent to this, however, and previous to the making of the taxes, one of the defendants was at the plaintiff's house and asked him if he should not give in more than $2000, to which he replied that he should not and then offered to make oath to that sum before said selectman, who began to administer the oath but not recollecting the form of the oath, it was not administered. The defendants then introduced evidence to prove that the plaintiff had more than $2000 due to him on interest on the 1st April, 1824. But it did not appear that the selectmen when they doomed him to be taxed for $15000 had any knowledge of the particular sums due to him.

Some portion of the money which the plaintiff had on interest appeared to be money which he had in his hands as administrator of his father's estate.

The court instructed the jury that selectmen had a right to require any person to give his invoice on oath at any place where they might meet him ; that if he were not then prepared, it would be their duty to give him time to prepare one, but that he must prepare it and go with it to the selectmen and that they were not bound to call upon any person a second time ; but might doom him if he neglected to furnish an invoice on oath ; and that although the plaintiff offered to make oath before one of the selectmen, yet as from some cause the oath was not actually administered, still they had a right to doom him.

The court further instructed the jury that Willard might be considered as having given in legally $2000; yet if in fact he was liable to be taxed for a greater sum the selectmen had a right to doom him to be taxed in four times the amount of the sum for which he was liable to be taxed above the $2000 although at the time they had no particular knowledge of the sum due to him and had not discovered any particular sum concealed by him; and that they might avail themselves now of that right by shewing that he possessed at the time more than $2000.

The court further instructed the jury that the plaintiff was liable to be taxed for such portion of the money in his hands as administrator of his father's estate as would on settlement belong to him as heir.

The jury returned a verdict in favor of the defendants and the plaintiff moved the court to grant a new trial on the ground that improper evidence had been admitted and the jury misdirected.

*Woodbury* and *J. Parker*, for the plaintiff contended, that by the letter as well as the spirit of the statute of Feburary 8, 1791, sec. 3, no person was subject to any doomage without a neglect or refusal on his part to give an inventory of his estate under oath. But the plaintiff in this case has been guilty of no such neglect or refusal.

The selectmen were bound to call upon the plaintiff at a proper time and place for an inventory on oath before he could neglect or refuse. The statute provides that the selectmen shall in some way notify the inhabitants when and where they will meet to receive the invoice, or they may make personal application to the inhabitants for an account of their polls, &c. and "if any person shall neglect after being duly notified or shall refuse when called upon in person by any of the selectmen to give a true account of his poll and rateable estate on oath, the selectmen may set down to such person by way of doomage such sum as they may judge equitable." The selectmen are authorized to doom only in two instances. 1st, When they give notice of the time and place when and where

they will receive invoices and any person neglects to appear. 2nd, when they or some of them call upon an inhabitant in person and he refuses to give an inventory.

In this case the plaintiff was not notified to give his invoice at any particular time or place, but the selectmen called upon him and requested him to give his invoice. But they called upon him at an improper time and place. He was absent from his home and his papers, and could not be expected to be able to give an account of his money at interest. He however gave an account according to the best of his recollection, and being asked if he would make oath to it, offered to do it if they would go to his house so that he might have an opportunity to ascertain that his recollection was correct. Here then there was no neglect on the part of the plaintiff.

But at a subsequent time he actually offered to make oath to the truth of the sum he gave in before one of the selectmen, and would have sworn had the selectman recollected the form of the oath. He was not bound to give in his invoice and make oath before all the selectmen ; for they had given no notice where they would meet to receive it ; and the statute empowering any one of them to call for the invoice and administer the oath, the offer to make oath before one, was sufficient, and there is no ground for holding that he refused or neglected. Every thing was done by the plaintiff which any reasonable man could require of him under the circumstances. He neither believed then nor does he now believe, that the selectmen wished him to do any thing further. Nor does he believe that he was bound in law or equity to do it, unless required by one of the selectmen, after he had once exhibited his inventory and offered to make oath to it before a proper person and at a proper time and place. The plaintiff has done all which has been required of him at a proper time and place, and has been always ready to do any thing more that might be reasonably asked. He was not notified that any thing further was

desired. Hence he was guilty of no neglect or refusal, and could not be legally doomed under the third section of the statute.

It was further urged that the selectmen could not doom the plaintiff under the fourth section of the statute, where an inventory had been duly given in and received either with or without oath, unless the party had been notified so as to be heard as to the supposed fraud.

And if they could doom him under that section after he had offered to make oath, it must have been on a subsequent discovery of particular property not included in the inventory. But here the selectmen put down in the invoice $15,000, before Willard gave in his inventory and offered to make oath to it, and did not put it down after any subsequent discovery.

Under this section of the statute the invoice of the selectmen must show the amount of property discovered, and then the tax on that property must be quadrupled. Otherwise the invoice will not show the true amount of the taxable property in the town and is not a legal invoice. But here if the selectmen quadrupled any thing, it was the invoice, and not the tax. The sum in the invoice should have been only one fourth part of the $15,000, or the tax should have been four times the amount of the tax on $15,000. Thus the tax appears on the record to be a tax under the third and not under the fourth section of the statute ; and therefore the evidence as to the amount of the money which the plaintiff had at interest was all irrelevant and incompetent.

There was no pretence of a fourfold tax here, nor of a discovery of any particular property. After the suit was brought, the defendants attempted to discover large sums due to the plaintiff—and he did not attempt to bring in an account of his debts so as to strike a balance, being instructed that it could not be necessary in this suit.

It also deserves remark that the fourth section of the statute is penal in its operation, it must therefore be con-

strued strictly. To bring a case fairly within the section the property must be discovered afterwards ; it must have been concealed by fraud, and the tax must be quadrupled on the particular property so concealed and so discovered.

It was also contended that the jury were misdirected in relation to the money in the hands of the plaintiff as administrator of his father's estate.

RICHARDSON, C. J. Upon the trial of this cause the defendants relied upon two grounds of defence. In the first place they contended, that the plaintiff having refused, when they called upon him in person, to give a true account of his poll and rateable estate on oath, they set down to him by way of doomage the sum of $15,000, being in their opinion an equitable sum, as they were authorized to do by the third section of the statute of February 8, 1791. In the second place they contended that the plaintiff having given them an account only of $2000 money at interest and bank stock for which he was liable to be taxed, did not give in the whole, but endeavored to conceal a part from their knowledge, and that under the fourth section of the said statute they taxed him in all the taxes of the year four times as much as the estate so fraudulently concealed, would, if given in by him, by law have been rated or taxed.

In answer to the first ground of defence the plaintiff contended, that the defendants having called upon him to give an account of his rateable estate at a time when he was absent from home, he was not by law bound upon such a call to give a true account of his rateable estate upon oath, and that his refusal to give such an account could not under the circumstances legally subject him to be doomed under the third section of the statute ; and that his subsequent offer to make oath to the truth of his account before one of the selectmen was all he was by law bound to do.

The instructions given to the jury on this point were in substance, that the plaintiff was bound to be ready to

give an account of his rateable estate on oath at any place where the selectmen might request it ; that they were not bound to call upon him a second time ; that after they had once requested him, it was his duty to have gone to them and to have given an account on oath ; and that his offer to make oath before one of the selectmen, who was unacquainted with the proper form of the oath to be administered, was not sufficient. And the first question in this case is whether these directions were correct ?

The statute enacts " that the inhabitants of the several towns, &c. shall annually exhibit to the selectmen a just and true account of their polls and estates rateable by law. And the selectmen shall give warning, &c. of the time and place in such town when and where they will meet to receive such account ; and the said selectmen may make personal application to the respective inhabitants of such town for an account of their polls and rateable estate, &c. ; and said invoice shall be taken of what the respective inhabitants shall be possessed on the first day of April annually, and shall be taken some time in the same month, &c. And if any person shall neglect after being duly notified, or shall refuse when called upon in person by any of the selectmen to give a true account of his poll and rateable estate on oath if required, &c. the selectmen may set down to such person or persons as much by way of doomage as they shall judge equitable and make the assessment accordingly." 1 N. H. Laws 258—259.

We have attentively examined these provisions in the statute and have also considered the directions which were given to the jury, and are of opinion that the jury were correctly instructed on this point. It is well known to all the inhabitants of towns, that an inventory is to be taken annually in the month of April of all the taxable property of which they are possessed on the first day of that month. This must be known to all, because the law requires it, and because it is annually done. And we are

of opinion, that it is the duty of all to be ready to give promptly a true account on oath of their taxable property whenever within that month and wherever the selectmen may request it. It is no part of the duty of selectmen, when they call upon an individual at his home, to tarry until he can examine his papers and make a calculation of his money at interest. They may do it if they choose, but it is no part of their duty. He is bound to be ready. Much less is it their duty when they find him abroad to go home with him for the purpose. When they have requested him to give an account of his taxable property, they have done their duty, and it then becomes his duty to see that a correct account is given to them on oath. It is very obvious that any other rule would involve selectmen in endless embarrassment and trouble.

Cases may occur, where time should be given to an individual to prepare his account. But in such cases it should be distinctly understood that the selectmen have done all which the law requires of them, and that it is the duty of the individual, to whom time is given, to prepare his account and carry it to the selectmen, and there make oath to the truth of it if required. They are not to be held to call upon him a second time at the expence of the town. And if he fail from any cause after being once requested to give an account on oath, they have a clear right to set down to him by way of doomage as much as they shall judge reasonable.

In this case the plaintiff was duly requested to give an account on oath of his taxable property. At the time and place of the request he was not prepared to do this, but offered to do it if they would go with him to his house. This they declined, and told him that they should set down to him, by way of doomage, $15,000. They however informed him that he might afterwards exhibt an account on oath. Now in all this the conduct of the selectmen seems to us to have been fair and correct. It was certainly no part of their duty to go to the plaintiff's house ; and it

Willard
v.
Wetherbee.

was clearly his duty to have been ready to give an account of his property on oath. But how was this conduct on the part of the selectmen met by the plaintiff? Instead of making out an account and exhibiting it to the selectmen on oath, he casually met one of the selectmen and offered to swear that $2000 was the true sum. But that selectman, after making the attempt, was found not able to administer the oath—it was not administered and nothing further was ever done on the subject by the plaintiff. Was this all he was, under the circumstances, bound to do? We think not. He was bound to find a selectman or a magistrate who could administer an oath and to take the oath required; and he not having done this, his taxes for that year were, in our opinion, justly and legally assessed upon the sum set down by the selectmen by way of doomage.

We are therefore of opinion that the exceptions taken by the plaintiff's counsel to the directions given to the jury on this point must be overruled.

But as the cause was submitted to the jury upon both the grounds taken by the defendants, it is necessary to examine the answer which the plaintiff gives to the other ground of defence. For if the plaintiff can give a good answer to either ground, there must be a new trial, because it is not known on what ground the jury found for the defendants.

The fourth section of the statute enacts, "that if any person in giving in an account to the selectmen of his estate rateable by law, shall not give in the whole of his estate so rateable, but shall conceal some part thereof from the knowledge of such selectmen, they may, for any estate so concealed and not given in, upon discovery of the fraud rate such person in all taxes of that year four times as much as such estate, if given in by the owner, would by law have been rated or taxed." To the ground taken by the defendants that they were warranted in assessing upon the plaintiff the sum they did under this clause in

the statute, because he had been guilty of a fraudulent concealment of his property, the plaintiff answers in the first place, that the defendants had no right to act under this clause of the statute until he had been heard before them as to the supposed fraud, and had had an opportunity to explain the transaction. It is undoubtedly a principle of natural justice that every man shall have an opportunity to be heard before he is condemned ; and to a hearing this plaintiff was certainly entitled, but not before the selectmen. They were in this business merely ministerial officers whose doings were valid only so far as they were warranted by law. He was entitled to a hearing before a court of competent jurisdiction and has availed himself of that right by bringing this action. A hearing in this case is all the hearing to which he is entitled. There is no pretence that a hearing before the selectmen was necessary. It might as well be contended that the property of individuals cannot be legally taken by the sheriff on a writ, until they have had an opportunity to be heard before him.

Another answer given by the plaintiff to this ground of defence is, that there was no evidence that the selectmen had any particular information of the sums concealed, or that they had discovered the fraud when they made the tax ; and as the statute authorizes them to act only "*upon discovery of the fraud*," it does not appear that they had authority to act. It is manifest, that this answer is founded upon the supposition that the fraud existed, but it is denied, that the selectmen had any right to act upon it. And in order to ascertain the sufficiency of this answer, we must advert to the nature of the controversy. The plaintiff brought his action against the defendants on the ground that they had taxed him a larger sum than he ought by law to have been taxed. Their defence was, that he had fraudulently concealed a part of his property in giving them an account of it, which warranted them in assessing the tax. Now the question

is, whether it is any answer to this defence, that it is not shown that the defendants had notice of the fraud when they assessed the tax ? We think not. The question was, whether the plaintiff had committed a fraud which warranted the defendants in assessing the tax ? If he had, the tax was legal. The views and motives of the defendants were immaterial. They may have assessed the tax under a total misapprehension of the law and the facts ; yet still if the law authorized what they did, this action cannot be maintained. It was therefore wholly immaterial what information the selectmen had, or upon what evidence they acted. The question was not whether they had sufficient evidence of the fraud, but whether there had been a fraud, which justified the tax. The selectmen may have acted upon suspicion or conjecture. They acted at their own peril. It cannot be now made the subject of enquiry upon what evidence they acted. The only enquiry is, did they act legally ? If they did, the law will protect them, even though they may have so acted through misapprehension and mistake.

The plaintiff's counsel have also urged as a further answer to this ground of defence, that the selectmen actually put down to the plaintiff $15,000 as bank stock and money at interest, and assessed his tax accordingly ; so that the tax appears by their records to have been made under the third and not under the fourth section of the statute.

But it must be recollected that this action is brought not for any irregularity in the mode of taking the invoice, or in the manner of assessing the tax, but for taxing the plaintiff more than he was by law to be taxed. This is the grievance stated in the declaration. And although the defendants may have actually proceeded upon the third section of the statute, we are unable to conjecture any good reason why they may not be permitted to show, that their doings were warranted by the fourth section of the statute also. In this case if the doings of the se-

lectmen are legal, it is wholly immaterial whether they be so by accident or by design.

It has also been urged that the plaintiff was instructed that this ground could not be taken by the defendants, in consequence of which he did not come to the trial prepared to meet it. But it is now too late to raise this objection. If the admission of the evidence on this point was a surprise upon the plaintiff, he should have asked at the trial for time to meet it and according to the usual practice of the court might have had it. But he saw fit to take his chance with the jury upon the evidence as it stood and must now be held to abide the result.

It has been further said that the plaintiff was not liable to be taxed for that portion of the money remaining in his hands as administrator which would on settlement of his administration account belong to him and which was upon interest. But no reason, why he should not be taxed for such money, has been suggested by counsel, nor has any occurred to us.

We are therefore of opinion that there must be

*Judgment on the verdict.*