# Smith *vs.* Burley and a.

The property of manufacturing corporations is taxable to the corporation in the town where the property is situated; and the act of January 4, 1833, does not authorize a taxation of the stock in such companies to the owners of the shares.

CASE, against the selectmen of Exeter, for illegally assessing the plaintiff for certain shares owned by him in the Phœnix Factory, so called, being a corporation for the manufacture of cotton goods, in Peterborough, in this state.

All the property of the corporation, real and personal, was duly taxed to the corporation, in Peterborough, and the taxes paid for the years for which the taxes in question were assessed against the plaintiff on his shares.

It was agreed that the plaintiff was the owner of the shares, and that the tax was duly assessed, if the plaintiff, who resided in Exeter, was liable to be taxed there for that property.

Judgment to be rendered according to the opinion of the court.

*Farrar*, for the plaintiff.

G. *Sullivan*, and *Lawrence*, for the defendants, cited 17 *Mass.* 461, *Amesbury C. & W. Man. Co.* vs. *Amesbury*, 11 *Pick.* 514, *Goodell Man. Co.* vs. *Trask* ; 1 *Chitty's Practice* 96 ; 10 *Mass.* 514, *Salem Iron Man. Co.* vs. *Danvers* ; 5 *Green.* 133, *Gardiner C. & W. Man. Co.* vs. *Gardiner;* 12 *Mass.* 537, *Bartlett & als.* vs. *King, Ex'r* ; 4 *Burr.* 2036, *Buggin* vs. *Bennett* ; 10 *Pick.* 37, *Com'th* vs. *Cooley* ; 1 *Pick.* 43, *Ellis* vs. *Paige* ; 1 *Kyd on Corp.* 317 ; 2 *Inst.* 703 ; *Angell on Corp.* 257.

PARKER, C. J. The act of December 16, 1812, to establish the rates at which polls and rateable estates should be valued in assessing taxes, contained provisions for taxing mills, carding machines, buildings, stock or property, whether of tanners, curriers, blacksmiths, or other tradesmen employed in the business of their trades ; and the stock in trade of merchants, shopkeepers and other traders ; but contained no express provision for taxing the property of manufacturing corporations, as such, either to the corporation or the share-holder. Very little property of that character then existed within the limits of the state ; and the policy of the state, for a period somewhat subsequent, was to encourage its introduction by an exemption from taxation. An act for the encouragement of manufactures, passed June 26, 1816, exempted the capital stock employed in the manufactures of cotton, woolen, and salt, not exceeding ten thousand dollars in any one manufactory, for the term of two years ; and special exemptions of different establishments, to a much larger amount, and for longer terms, were granted from time to time. The construction of one of these acts was considered, in *Souhegan Factory* vs. *McConihe*, 7 *N. H. R.* 309. An act of July 1, 1825, provided for the taxation of this species of property. Prior to this time, the general rule had been to tax personal property to the owner in the town

in which he resided, and there was no little discussion, in the house of representatives, prior to the passage of that act, respecting the rule which should be adopted—part of the members contending that the shares in the corporation being personal property, ought to be taxed to the owner, in the town where he resided, or in case he did not reside in the state, then in the town where the factory was situated, allowing that town, perhaps, the whole taxation of the real estate; and others contending for the taxation of the whole property to the corporation.

The latter principle was adopted, and the act was passed providing that the rateable estate belonging to any manufacturing company, or corporation, should thereafter be taxed to such corporation or company by its corporate name, in the town or place wherein said rateable estate was situated—that all raw materials, intended for manufacture, and all manufactures, belonging to such corporation, should be estimated as stock in trade—all buildings, workshops, and machinery, should be estimated and taxed as buildings; and that the stock in trade, buildings, and all other rateable estate of such corporation should be valued and taxed at the same rate as the same kinds of rateable estate owned by individuals. The same act provided that where any manufactory was owned by individuals not incorporated, it should be taxed to the owners, in the town where it was situated. *Laws of June session*, 1825, *page* 70.

By an act of July 7, 1826, neat stock, &c., kept in any town in this state, and stock in trade employed in any such town, owned by any person not residing in the town, was to be taxed to the person having the care of it, in the town where it was kept or employed. There was a strong opposition also to the passage of this act.

Upon the revision of the laws, preparatory to the publication of a new edition, and which consisted principally in collecting the provisions of different acts upon the same sub-

ject into one statute, the provisions of the act of July 1, 1825, and those of July 7, 1826, were substantially incorporated into the act of July 7, 1827, for establishing an equitable method of making taxes. *N. H. Laws, (ed.* 1830) 554.

The act of July 3, 1830, to establish the rate at which polls, &c., should be valued, and which repealed the act of December 16, 1812, made an alteration of the sums at which polls, and some kinds of goods and estate, should be valued, but made no change which could in any way affect the question at issue in this case.

At the time, then, when this latter act went into operation, there was not only no existing provision which would authorize the tax in this case, but there was a clear and explicit act of the legislature, passed in 1825, after a very full discussion, providing for the taxation of all the property to the corporation, in the town in which the estate was situated, and the subsequent readoption of the same provision, by its incorporation into the act of 1827.

The defendants are not understood as contending that this tax would have been warranted prior to 1833; but they allege that shares in a corporation are not the property of the corporation, and that the act of January 4, 1833, to establish the rates at which polls, &c., shall be assessed, provides for the taxation of these shares to the owner, and that it in fact repeals the provisions of the act of 1827, which has been before referred to.

This act provides in most instances for an appraisal of property, instead of valuing it at a specified sum, according to the former mode; and its second section enacts that " the selectmen, or assessors, shall set down in their invoices, in separate columns, the following classes of rateable estate, namely, polls, real estate including buildings, unimproved and improved land, whether owned by inhabitants or non-residents, mills, carding machines, wharves, ferries, factory buildings and machinery, locks and canals, and toll bridges,

to be assessed and invoiced in the town or towns where the same are located," &c.—"stock in trade," "bank stock," "marine and fire-insurance stock, also all stocks or securities in the public funds, turnpike shares, and all other stock in any corporation or company on which an income is received and dividend made, or which may be subject to any dividend," &c.

There is no doubt, as suggested in the argument for the defence, that shares in manufacturing corporations are not corporate property ; and the clause of the act of 1833, last cited, is broad enough to include them as subjects of taxation to the owner, if such was the intention of the legislature ; but we cannot for a moment suppose that such an intention existed, unless we can find that the provisions of the act of 1827, for taxing all the property to the corporation, is repealed by the act of 1833 ; for if that still stands, a taxation of the shares at their appraised value would in fact be a double taxation of the property, once to the corporation itself, and again to the corporators, which would be unjust, oppressive, and unconstitutional.

If the provision of the act of 1827, for assessing manufacturing corporations, is repealed by the act of 1833, it must be because the provisions of the latter are inconsistent with the former. But we are of opinion that the legislature intended no such repeal, and no change of the taxation from a tax on the corporation to a tax on the corporators, for several reasons. The purpose of the act of 1833, from its terms, evidently was to change the mode in which property was to be valued, so as to provide for an appraisal, as a more equal mode than an arbitrary valuation at certain sums for different kinds of property, and also to include property which had, perhaps, before escaped taxation. It enacts, in relation to most of the property subject to taxation, that it shall be set down at its full and true value in money, and in the invoice be estimated at half of one per cent. It includes locks and canals, toll bridges, bank stock of banks out of the state,

owned here, if not taxed where the banks are situated, money deposited in banks, and in savings banks beyond a certain amount, money loaned, even if not on interest, marine and fire-insurance stock, and turnpike shares. These provisions are in addition to those contained in the act of July 3, 1830 ; and then comes the general clause, " all other stock in any corporation or company," &c. There must be very strong reasons to authorize us to hold that this provision was intended to change the mode of taxing the property of manufacturing corporations, adopted but a few years before, after considerable controversy, and to repeal part of another act, to which no express reference is made. If stock in manufacturing companies was intended, it would have been quite as likely to be specially designated, as insurance stock and turnpike shares. There is much more of it to form the subject of taxation.

Again, in relation to factory buildings and machinery, the first part of the same section seems to be express that they are to be assessed in the town where they are located. This clause was probably inserted on account of the introduction of locks, canals and toll bridges, as subjects of taxation, which had not before been taxed ; but it seems to be made applicable also to buildings, mills, factory buildings, machinery, &c. It could not, however, have been intended to tax these to the shareholders, as stock in the corporation, in towns where the buildings were situated, and to tax the rest of the shares in the towns where the shareholders resided ; and to tax the buildings and machinery to the corporation, and then the shares at their whole value, would be a double taxation to that extent.

There is, furthermore, no provision for taxing the shares of owners who reside out of the state, which surely would not have been omitted had the intention been to change the mode of assessing taxes on such property.

Nor does the repealing clause indicate any such intention. It repeals, in express terms, the act of July 3, 1830, to estab-

lish the rate at which polls, &c., shall be assessed, and all other acts and parts of acts inconsistent with the provisions of the act of 1833. Had a change been intended in this respect, the natural course would have been to have repealed the sections of the act of 1827, relating to the taxing of manufacturing corporations. Those provisions are certainly not inconsistent with the act of 1833 ; for, supposing the clause in the act of 1833, " all other stock in any corporation or company on which an income is received," &c., to have been intended as a general clause, to include stocks in companies, if any, for taxing which no other provision had been made—and we have no doubt such was its object—the act of 1827, and that of 1833, may well stand together.

There is no indication of an intention to change the rule established by the act of 1826, for taxing neat stock, and stock in trade, in the town where they are kept or employed, when the owner resides in another town ; and the legislature unquestionably no more intended to change the taxation of manufacturing property from the place where it is employed, than the other.

There are and have been, as was remarked by the plaintiff's counsel, two classes of statutes upon the subject of taxation. The object of one is to establish the rates, and enumerate the property to be assessed, and the manner in which it is to be valued, and of the other to determine the jurisdiction where the property is to be taxed, who are liable, the manner of making the taxes, &c.

The provisions for taxing manufacturing property were in 1827 included in an act of the latter class, entitled " an act for establishing an equitable method of making taxes." Having specially provided that it should be taxed to the corporation—the buildings and machinery as buildings, the raw material and manufactured article as stock in trade, and the other rateable estate at the same rate as similar estate owned by individuals—the legislature cannot be held to have intended to change all this, on the revision of an act of the

first class, to establish the rates, &c., by any such general terms respecting "all other stock of any corporation" as are contained in it; especially where there are so many reasons to indicate that it was not within their contemplation.

*Judgment for the plaintiff.*