28  419
71  278

## SCAMMON *v.* SCAMMON *& a.*

A meeting-house is *prima facie* a public place for posting notices.

Selectmen must be elected by ballot and by major vote; and the record, if necessarily used as proof of their authority, must show those facts.

A record that a public officer took the oath of office, imports that he took the oath of office prescribed by law.

Selectmen alone may assess taxes, if no assessors are elected.

Where selectmen enter in their invoice *wilfully omitted* $800, and in the column headed *doomage* $3,000, and assess a single tax on that sum, the character of the assessment sufficiently appears.

The statute, requiring a copy of the invoice and assessments to be left with the town clerk before July 1st, is directory only, as to all taxes which may be collectable before that date.

If parties upon a trial agree that evidence, which is wanting, may be supplied after verdict, in a particular mode, the court have no power to change their agreement by substituting other proof.

A memorandum in this form, " Due S. G. $10,000, to be paid for her support, as needed, and if no part is needed, no part is to be paid," is not evidence of a debt of that amount, nor of a liability to pay interest for that sum.

Proof that a party had property to a certain amount years before, is admissible as tending to show his present estate.

TRESPASS, for taking and carrying away certain of the plaintiff's cattle.

Plea, the general issue, with a brief statement, setting forth that the defendants, as selectmen and assessors of taxes, in the town of Stratham for the year 1849, lawfully assessed a tax against the plaintiff, a citizen of said town, and committed the same, with their warrant, for the collection thereof, to the collector of taxes, by whom said cattle were distrained for non-payment of said tax.

Upon the trial, the defendants, for the purpose of proving their election as selectmen, produced the records of said town, from which it appeared that a warrant was duly issued, calling a meeting of the inhabitants of said town, to be held on the 7th of April, 1849, for the purpose of choosing selectmen and other town officers. In the return, on the back of the warrant, it is set forth that copies thereof

were posted at the Baptist meeting-house, and at the place of meeting, but without stating that said Baptist meeting-house was a public place, and the plaintiff objected that it did not appear that said warrant was posted at a public place.

Among the records of the proceedings of said meeting is the following: " Chose John Scammon, Benjamin H. Jewett and Daniel Wiggin, [the defendants,] selectmen, who took the oath of office." The plaintiff objected that it did not appear that they were chosen by ballot, or by major vote, nor that they were duly sworn.

There was no record of the choice of assessors as such, and the plaintiff objected that it did not appear that assessors of taxes were chosen for that or any previous year.

It was admitted that the plaintiff gave into the defendants an account of his taxable property, claiming it to be a true account, when they called on him, in April, 1849, for that purpose; and in the list of assessments for that year, contained in the invoice-book of the selectmen, the name of the plaintiff appeared among the names of the other citizens of the town, alphabetically arranged, the different kinds of taxable property so given in by him, with the value and numbers of the respective classes set in figures against his name, in their proper columns, and under their appropriate heading, in the usual manner and with the following addition, written in the list, by the selectmen, opposite to the plaintiff's name, in the column under the head of doomage, to wit: " wilfully omitted $800, taxed $3,000;" and the tax against the plaintiff was assessed upon the property so given in by the plaintiff, with the addition of said $3,000 thereto.

No other specification appeared of the property claimed to have been wilfully omitted by the plaintiff. Said invoice-book consisted of said list of names, with the amounts and numbers of the different classes of taxable property of each person set against his name, in columns under their appro-

priate heads, and the amount of tax against each person in another column, with a certificate of the selectmen that the same is the invoice taken, and assessments of the taxes made by them. No other record of the invoice taken, or of the taxes assessed for that year, was produced.

The defendants produced a copy of said invoice and assessments, with a certificate thereon, signed by the town clerk of said town, without date, as follows; " A true copy, L. Wiggin town clerk;" and it did not appear by any other evidence that said invoice and assessments, or a copy thereof, were left with the town clerk prior to the 1st of July, 1849, or were recorded by him. The warrant of the defendants to the collector of taxes, directed him to pay over a portion of the amount of taxes, to be by him collected, to the State and county treasurers. No warrants of the selectmen from the State or county treasurers were produced, but the attorney for the defendants, not having them in court, by reason of a misunderstanding between him and the attorney for the plaintiff, proposed to produce them, if delay should be granted, to enable him to procure them; and it was agreed between them that the trial should proceed without the production of said warrants before the jury, and that the same being produced to the presiding justice, at any time during the term, it should be regarded as equivalent to their being produced before the jury at the trial. After the verdict was rendered, and before the close of the term, the defendants furnished satisfactory evidence to the court of the existence of said warrants, and of their being in the hands of the selectmen previous to the assessment of said tax and of their subsequent loss.

At the trial, the defendants contended that in the account given by the plaintiff of his taxable property, there was a wilful omission of money on hand and at interest, at least to the amount of seven hundred and fifty dollars, and there was in the case much evidence, on this point, on both sides. On the part of the defendants, evidence was introduced

tending to show that the plaintiff's wife inherited a large estate from her father, and that the plaintiff received a considerable amount of personal property from said estate, and that some time previous to 1849, he purchased of the widow of his said father-in-law her interest in the estate, and gave her therefor a note for ten thousand dollars, which note was afterwards given up by her, and the following given in exchange therefor:

" Due Sophia Gordon [the said widow] ten thousand dollars, to be paid for her support, as needed, and if no part is needed, no part to be paid.

(Signed)                    STEPHEN·SCAMMON."

There was evidence ·tending to show that the said widow, in the spring of 1849, and prior thereto and since, was residing in the plaintiff's family, at his expense, and that nothing had been paid towards that $10,000, in any other way than by her being supported in his family.    The plaintiff's counsel requested the court to instruct the jury that said note for $10,000 was to be reckoned by them as so much money, for which the plaintiff was paying interest, but the court declined so to instruct them, but did instruct them that the amount of property received by the plaintiff from the estate of his wife's father, and the amount of the consideration paid, or agreed to be paid by him to her mother, the widow, for her interest in the estate, was to be considered by them in connection with the other testimony in the case, as it bore upon the question whether, on the 1st of April, 1849, the plaintiff had on hand and at interest, a greater amount of money than the sum given in by him, over and above the amount for which at that time he ·was paying interest; and that if he had at that time on hand and at interest a sum greater by seven hundred and fifty dollars than the amount so given in by him, over and above the amount for which he was paying interest, and knowing

this to be so, designedly omitted to include that in his account of money on hand and at interest, for the purpose of avoiding taxation thereon, the defendants were justified in adding four times the amount, being $3,000, to his invoice, as they had done, and to tax him on the invoice thus increased, and their verdict should be for the defendants, otherwise for the plaintiff. The jury returned a verdict for defendants, and the plaintiff moved that the same be set aside, and a new trial granted, upon the grounds and for the reasons aforesaid.

*Hatch*, for the plaintiff.

The tax under which the defendants justify was not lawfully assessed.

I. It did not appear by the return of the selectmen, nor by any evidence in the case, that the warrant for the town-meeting was posted in a public place. Comp. Stat. ch. 34, § 4.

A Baptist meeting-house is not necessarily a public place. It may not have been in use. *Nelson* v. *Pierce*, 6 N. H. Rep. 194.

II. It did not appear that the defendants were chosen selectmen by ballot or by major vote. Comp. Stat. ch. 36, § 2.

III. It did not appear that they took the oath of office "prescribed by law." Comp. Stat. ch. 37, §§ 2, 3.

IV. The tax was assessed by the defendants as selectmen, without the aid of assessors. But assessors are necessary to constitute a board for the assessment of taxes. Comp. Stat. ch. 36, § 3.

V. The defendants were not authorized to assess any tax, except upon one or more of the articles enumerated in the statute as taxable. Comp. Stat. ch. 41.

If the plaintiff wilfully omitted any part of his taxable estate, the defendants were at liberty to set down the omitted property *specifically* in the tax-list, and assess it fourfold. Comp. Stat. ch. 43, § 6.

But they had no right to assess any thing on the plaintiff as " doomage " merely. They were bound to specify what they taxed.

VI. An invoice, made up with the error named in the last exception, could not be recorded as a true invoice, capable of being recorded, as required by the statute. Comp. Stat. ch. 45, § 6.

VII. It did not appear that a copy of the invoice and assessment of the taxes was left with the town clerk, to be recorded prior to July 1, 1849. Comp. Stat. ch. 45, § 6.

VIII. The tax assessed upon the plaintiff embraced the State and county tax. No authority for the assessment of these taxes was shown. Comp. Stat. ch. 45, § 3.

The agreement of the plaintiff's counsel admitted that this defect might be supplied by the production of the proper warrants. But it was not agreed that the court might find the fact of the existence and loss of the warrants by evidence *aliunde*. On that question the plaintiff has the right to the finding of a jury, and he has never waived it.

And the charge to the jury was erroneous because

IX. The plaintiff submits to the court the question whether the agreement of the plaintiff with Mrs. Gordon was not evidence that he was paying interest on $10,000, or some less sum. Mrs. Gordon was taxed for it as so much money at interest, in Epping, as will appear by two other cases now before this court. *Gordon* v. *Norris* ; *Gordon* v. *Rundlett.*

X. The amount of property received by the plaintiff of his father-in-law's estate, or purchased of his widow, prior to 1849, had no tendency to show what the plaintiff was taxable for in Stratham, in 1849. A man worth a million may have little property liable to taxation in the town where he happens to reside, as if his property be real estate or in certain stocks.

XI. The plaintiff was doomed $800 and taxed thereon

Scammon v. Scammon.

for $3,000. The court ruled that the defendants were justified, if they showed $750 wilfully omitted.

*Marston*, for the defendants.

I. It is not necessary for selectmen to state, in their return, that the place where they posted their warrant was a public place. If they state such facts that the court can determine that the place is a public place, that is sufficient.

II. The court will presume that the selectmen were chosen by ballot and by major vote, as in case of *Gordon* v. *Norris*, the court said they would presume the selectmen applied to the plaintiff for his inventory, in April, because the law required them so to do.

III. The record is that the selectmen " took the oath of office," which is equivalent to saying they took the oath prescribed by law. There can be no other oath of office than the one prescribed by law.

IV. The statute says selectmen *shall* be chosen, and assessors *may* be. The latter officers are not imperatively required and are not usually chosen; when no assessors *eo nomine* are chosen, the selectmen are assessors.

V. This and the sixth point made by the plaintiff in his brief, are disposed of by the case of *Gordon* v. *Norris*, decided at this term.

VII. The court will presume that a copy of the invoice and assessment of the taxes was left with the town clerk prior to July 1st, 1849, because the law makes it the duty of the selectmen so to do. Certainly no presumption can be made from any thing that appears in the case, that they were not so left. If it were not done, the assessment of taxes would not be for that reason void.

VIII. The plaintiff, in waiving his right to have the warrants produced to the jury, also waived his right to have what was equivalent thereto produced before them on proof of their loss. The substance of the agreement was, that in respect to that portion of the proof, the court might deter-

mine the facts instead of the jury. The plaintiff had no
right, (as he contended we had,) to have the jury pass upon
the question of the loss of the warrants. Such proof is al-
ways addressed to the court.

The objection to the secondary proof after the rendition
of the verdict, because the agreement does not, in so many
words, embrace it, is almost too sharp for fairness. The
charge of the court, in relation to the $10,000 note or
agreement, and the property received by the plaintiff from
his father-in-law, was sufficiently favorable to the plaintiff.
It was not incumbent upon the court to rule that the
$10,000 note or agreement was conclusive evidence that the
plaintiff was paying interest upon that or any less sum.
The whole arrangement between the plaintiff and his moth-
er-in-law, in respect-to this property, was for the purpose of
avoiding taxation. The court told the jury to consider the
property the plaintiff received from his father-in-law, and the
consideration he paid him for it, in connection with the
other testimony, as it bore upon the question whether he
had more money than he gave in, over and above what he
paid interest for, and in that respect the charge could not
have been better or fairer.

But the defendants contend that this action cannot be
maintained. If the plaintiff was over-taxed, his only rem-
edy was to petition for an abatement.

He was rightfully taxed in Stratham for some estate.
He gave to the selectmen an account of his taxable property,
*claiming it to be a true account.* It does not now lie in his
mouth to say that he did not fully comply with section 4 of
chapter 47 of the Compiled Statutes, because the account
he gave was not, in fact, true. He gave in his inventory,
and if the selectmen had refused to abate his taxes, he could
have applied to the court of common pleas, and had such
order thereon as justice required.

In all cases where the party taxed, after application to the
selectmen, may apply to the court of common pleas, the

---

Scammon v. Scammon.

---

statute remedy is the only remedy. *Woods* v. *Nashua M. Co.* 4 N. H. Rep. 527; *Osborne* v. *Danvers*, 6 Pick. 98; *Walker* v. *Cochraine & a.* 8 N. H. Rep. 169; *How* v. *City of Boston*, 7 Cush. 273.

The mode of redress by petition to the court of common pleas, when that remedy is open to the party, is for the advantage of all concerned.

The process is simple, inexpensive, and expeditious. The power of the court is ample to make such order as justice requires. Public policy requires that this should be held to be the only remedy in those cases, where it can be resorted to at all. The general principles of law require it, as stated in the cases cited. And this view is sustained by all the decisions of similar questions in other States. *Gedney* v. *Inhabitants of Tewksbury*, 3 Mass. Rep. 307; *Little* v. *Greenlief*, 7 Mass. Rep. 236.

*Hatch*, in reply.

II. The court cannot presume that the defendants were lawfully elected selectmen. They set up that allegation by way of defence, and must prove it. As well might the court presume that the defendants were selectmen without any proof, as that they were elected by ballot without some proof of the fact. *Cain* v. *Robertson*, 9 N. H. Rep. 524.

VII. The defendants justify the trespass alleged in the declaration, by the allegation that they committed it in the collection of a tax lawfully assessed.

Now they cannot make out their justification unless they show that they complied with the statute in all respects. They had no right to dispense with any portion of the statute, nor to allege that any part of it is unimportant.

VIII. At the trial, the defendants were unable to produce the warrants of the State and county treasurer. The plaintiff, as a matter of accommodation, consented that the warrants might be produced after the trial. The agreement extended no further; nothing further was asked. To make

use of such an agreement, obtained on such representations, for the purpose of offering a substitute for the warrants, and of precluding the plaintiff from all inquiry at the trial as to their existence and validity, on both which points the jury should, under the instructions of the court, have passed, can hardly be dignified with so innocent a name as " sharp-practice." No suggestion that the warrants were lost was made at the trial.

· The right given to a person over-taxed to apply to the court of common pleas for abatement, (Comp. Stat. ch. 47, § 2,) does not take away the right of the party to his action for an unlawful taxation. *Chase* v. *Sparhawk*, 2 Foster's Rep. 143, and *Osgood* v. *Blake*, 1 Foster's Rep. 550, are directly in point.

If the obligation for $10,000 be taxable property, the charge to the jury was wrong ; for counting that as taxable, the balance of evidence in favor of the plaintiff was overwhelming.

BELL, J. The first objection to the tax under which the defendants justify, is that the warrant for the town-meeting was not posted in a public place. It is returned to have been posted at the Baptist meeting-house. It is said such a meeting-house is not necessarily a public place, and this is true. But we understand it to have been settled here that houses of public worship are ordinarily and *prima facie* to be regarded as public places. In *Tidd* v. *Smith*, 3 N. H. Rep. 181, *Richardson*, C. J., says, " the general understanding of the community on a question of this nature is entitled to much respect, and it is believed that this understanding has viewed as public places houses of public worship, inns, and perhaps, in some places, shops where goods are retailed."

There are but few towns in the State where there are to be found any places of a more public character than meeting-houses; and our impression is that so extensively has

the idea prevailed that meeting-houses are to be regarded as public places, that it has hardly ever been deemed necessary to add to a return that a notice had been posted at a meeting-house, the further fact that it was a public place, as perhaps it is most judicious to do; and it might now be attended with mischievous consequences to hold all such returns defective.

Where a warrant, then, is returned to have been posted at a house of public worship, it will be *prima facie* taken to be a public place, and the party who objects that from the character of the town or of the house, it is not properly to be so considered, is bound to show the grounds of his objection. In the case of *Gibson* v. *Bailey*, 9 N. H. Rep. 175, it was held that the return must show that the warrant was posted in a public place, but the case there was that of a dwelling-house, and we think the case of houses of public worship may well form an exception to that general rule.

2. It is next objected that the record of the town-meeting does not show that the selectmen were elected by ballot or by major vote. Rev. Stat. ch. 34, § 2. As the statute expressly requires the election of these officers to be by ballot and by major vote, and an election otherwise made is merely void, we think this defect fatal. When the authority of public officers is questioned, in a suit to which they are themselves parties, they are bound to prove that every requisite of the law has been complied with. *Brewster* v. *Hyde*, 7 N. H. Rep. 206; *Blake* v. *Sturtevant*, 12 N. H. Rep. 567; *Tucker* v. *Aiken*, 7 N. H. Rep. 131. As the town clerk may be permitted to amend his record according to the fact, (*Bishop* v. *Cone*, 3 N. H. Rep. 513; *Gibson* v. *Bailey*, 9 N. H. Rep. 176,) it was better that an amendment should be required, than that any presumption should be adopted to support the deficient record.

3. It is further objected that the record does not show that the selectmen took the oath of office prescribed by law. This objection seems to us without substantial foundation,

since " took the oath of office," seems to us to import the oath of office prescribed by law. No other oath can be called *the oath of office*, the official oath. This case seems to us clearly distinguishable from *Cardigan* v. *Page*, 6 N. H. Rep. 182, where the record was " *sworn into office*," and *Gibson* v. *Bailey*, 9 N. H. Rep. 170, where the record was " qualified by F. C., Esq.," and *Ainsworth* v. *Dean*, 1 Foster's Rep. 400, where there was a similar record. The first of these cases seems to us to go to the very verge of the law. It would not have been a forced or unnatural construction to have held that the words " sworn into office," imported the same thing as " took the oath of office as by law prescribed."

4. It is urged that the tax was assessed by the selectmen without the concurrence of the assessors, who, it is insisted, are necessarily required to assess a legal tax. For this idea, we think, there is not the slightest color. The power of assessing taxes is, in terms, conferred upon the selectmen, without referring to the assessors. Rev. Stat. ch. 43, § 3, &c. It is optional with towns to choose assessors to form a joint board with the selectmen, in the assessment of taxes, (Rev. Stat. ch. 34, § 3,) and in a great proportion of the towns in the State no assessors are usually chosen. *Hayes* v. *Hanson*, 12 N. H.Rep. 284. That the assessment is valid, if made by the selectmen alone, is apparent from 12 N. H. Rep. 284; *Cardigan* v. *Page*, 6 N. H. Rep. 182; *Brackett* v. *Whidden*, 3 N. H. Rep. 17; *Gove* v. *Lovering*, 3 N. H. Rep. 292; *Smith* v. *Burley*, 9 N. H. Rep. 423; *Chase* v. *Sparhawk*, 2 Foster's Rep. 134.

5. The fifth exception is, that the selectmen were bound to set down the omitted property specifically in the tax-list, and assess it fourfold, and had no right to assess any thing as doomage merely. This objection seems to us unfounded in fact. The only ground for assuming that the assessment was upon doomage is, that the amount is set down in the column under the head " doomage." If that were all that

appeared there might be force in the suggestion. But here the true character of the assessment is distinctly stated. *Wilfully omitted* $800, showing exactly what they claimed to assess as omitted. The selectmen were not bound to tax four-fold the whole property they believed to be omitted, but might limit their penal assessment to a less sum, if they thought proper. Rev. Stat. ch. 41, § 6. Upon the case of *Willard v. Wetherbee,* 4 N. H. Rep. 128, it might be well contended that if, upon the face of the invoice, the sum assessed appeared as doomage, the selectmen might be permitted to show that they were also warranted in making the assessment under the section relative to fraudulent concealments. If it is said in that case the doings of the selectmen are legal, it is wholly immaterial whether they be so by accident or design.

6. The sixth objection is founded on the preceding, and falls with it.

7. The seventh exception is that a copy of the invoice and assessment was not left with the town clerk, to be recorded before July 1. Section 6 of chapter 43 of the Revised Statutes provides that the selectmen shall record the invoice and assessment, and leave them, or a copy of them, with the town clerk before July 1. This objection is founded on the decision in *Cardigan* v. *Page*, 6 N. H. Rep. 183, where in an action involving the title of land under a collector's deed, it was held that the tax was invalid, if this provision was not complied with. It is assumed that it is in the nature of a condition precedent, essential to the validity of the whole proceedings. But we cannot so regard it in the cases of the taxes generally, however it may be regarded in the cases of sales for non-resident taxes. Any tax may be collected before the first of July. The power of the collector is understood to be complete, upon the receipt of his list and warrant, and he may proceed to collect any tax as soon as he can give the legal notices for that purpose, and with short notice, where he has reason to

believe such person is about to remove from town.  Rev.
Stat. ch. 45, § 2.  And in our larger towns the taxes assess-
ed upon a large class of transient persons must be promptly
collected, or they are generally lost.  Certain steps must
be taken by the express requirements of the statutes before
the first of July, (Rev. Stat. ch. 46, § 2,) in order to collect
taxes on non-residents.  And it seems to us that the validity
of a tax cannot depend upon the punctual performance of
this duty by the selectmen, after the warrants for the collec-
tion of the tax have passed out of their hands.  We think,
then, that the provision of the statute, on this subject, must
be deemed merely directory.  The selectmen may be re-
sponsible, if they neglect their duty in this respect, but the
validity of the tax cannot be affected.

8.  The eighth exception is that there was no legal
authority shown to assess a State and county tax.  The
State tax being granted by a public law, of which courts *ex
officio* take notice, no other proof of that was required.  *Car-
digan* v. *Page*, 6 N. H. Rep. 191.  The assessment of a State
tax would still be valid, though no warrant was issued by
the State treasurer, because the amount of the tax and the
proportion of their town are fixed by public laws, though
the selectmen could not be charged, perhaps, with neglect
of duty, if they did not assess a tax for which they had no
warrant.

But it is otherwise with the county tax.  6 N. H. Rep.
191.  The authority to assess that tax must be proved.
In this case it was not proved.  The parties made an agree-
ment as to a substitute for that proof, but the defendant
has been unable to comply with it.  The court cannot ex-
tend this agreement beyond its natural import, nor exercise
their judgment as to what proof may reasonably be substi-
tuted.  The plaintiff, as to that, has, as he claims, a right ·
to the verdict of a jury.

9.  The next, which is probably the principal question of
the case, is whether the note, as it is called, of the plaintiff

to Mrs. Gordon for $10,000, is evidence that he is paying interest for that or any less sum.   That note is in the words

" Due Sophia Gordon [the said widow] ten thousand dollars, to be paid for her support, as needed, and if no part is needed, no part is to be paid.

STEPHEN SCAMMON."

This is but a special agreement, and by no means a promissory note.   It is not a contract to pay ten thousand dollars, constituting the signer the debtor of that sum, nor Mrs. Gordon, his creditor, for that amount, though the first clause seems designed to carry that impression.   It is merely an agreement to pay to Mrs. Gordon, for her support, as she should need it, to the amount of ten thousand dollars, if she needed it.   If she did not need any part of it, no part was to be paid.   It was not, therefore, evidence of any debt.   Still less was it evidence either of the payment of interest or of any liability to pay it.   There can be no interest, properly speaking, unless there is an indebtedness for principal.   No mention of interest is made in the writing itself.   It is limited to the payment of $10,000, without interest.   The court below, therefore, properly declined to give the instruction to the jury, which was requested by the plaintiff's counsel.

10.   The charge of the court below that the amount of property received by the plaintiff from the estate of his wife's father, and the amount paid to the widow, for her interest in that estate, might be considered by them, in connection with other evidence, as bearing upon the question whether the plaintiff had more money at interest than he paid interest for in 1849, seems to us to have been correct and proper.   Proof that a man had, or admitted he had, a certain amount of property, is evidence having a tendency to show that he now has it, of greater or less weight, in proportion to the greater or less distance from the time in question, and in proportion as it is or is not supported by other

and more direct proof. Proof that a witness' character was bad several years ago, is admitted as casting a suspicion upon his present title to credit. A state of things once proved to exist, is taken to continue, unless something be shown to throw doubt upon the conclusion. It is true, as urged by the plaintiff, that a man of large property may have little liable to taxation in the town in which he lives. But the general principle is, that for most kinds of personal property, for money on hand, or at interest, for example, a man is taxable where he resides. And circumstantial evidence, tending to show the possession of such property, equally tends to show him taxable for it in the town where he has his home.

11. The remaining objection, that the court below charged the jury that the defendants would be justified in taxing the plaintiff for $3,000, if they could show $750 wilfully omitted in his invoice, seems to have no foundation. It is well understood that the invoice and assessments are made in a very brief form, and it would not be judicious to criticise the language when the substance is found. If a suitable space had been found in the ruled blanks used for the invoice and assessments, this matter might, perhaps, have formed a column by itself, instead of being placed under doomage, but it is quite as evident, as it is, that it is not a case of doomage. So, if space had allowed, the selectmen might have said, " We add to Mr. Scammon's invoice for $800, money on hand or at interest, wilfully omitted by him in giving in his invoice, liable to be taxed fourfold, equal to $3,200, the sum of $3,000." In that case, the true character of their acts would be apparent, but, we think, it is equally plain what was meant by the brief entry they have made. Can they, then, show a right to tax the plaintiff for the sum of $3,000 ? They show it, if they show a sum wilfully omitted, which, being quadrupled, would equal that sum. We cannot but see that to tax a sum four times as large, is the readiest way to ascertain the amount of a fourfold tax.

The second and eighth exceptions being sustained, there must be a new trial.

*Verdict set aside.*

