## BLAKE *vs.* STURTEVANT & a.

Power is given, in the first instance, to each school district, by vote, to raise money to build or repair school-houses, for the use of the district, and to locate the same; but on their unreasonable neglect or refusal, the jurisdiction devolves on the selectmen of the town, who are bound to assess a sufficient tax on the district for this purpose.

Where a tax was raised by the district to build a school house, and a committee was appointed for this purpose; but, owing to some difficulty as to the land for the location of the house, the committee did not proceed, and a second meeting was called to take the whole matter into consideration, and the district was unable to elect a committee, but requested the selectmen to proceed and build the house—*Held*, that this was sufficient evidence of neglect and refusal, on the part of the district, to give the selectmen jurisdiction.

The invoice of property recorded in the books of the selectmen is *primâ facie* evidence of a proper invoice, until the contrary is shown.

Where suit is brought against individuals, who justify as public officers, they must show themselves officers *de jure*, and that they were duly qualified, by taking the oath prescribed by law. A record that they were merely sworn, is insufficient.

TRESPASS, against the selectmen of Keene, for taking the plaintiff's oxen, and causing them to be sold for payment of taxes, which the plaintiff alleged were illegally assessed against him.

Plea, the general issue, with a justification, that the defendants were selectmen, and caused the oxen to be sold for payment of taxes, lawfully assessed against the plaintiff. The plaintiff resided in district No. 12, in Keene, and this tax, of $60·09, was assessed and appropriated for the purpose of building a school-house in that district.

It appeared that the inhabitants of the district, at a meeting holden on the 6th day May, 1839, by virtue of a warrant from the selectmen, voted to build a school-house, near a large rock, on land of Alexander Millikin, and to raise $250 for that purpose. They also appointed a building committee, and voted to give Millikin $1·00 per rod for the land.

The plaintiff offered evidence tending to show, that in the latter part of June, or early in July, the committee went on to the ground, to stake out the land for the school-house—

that Millikin refused to part with any land south of the rock—and that, not being able to agree with him about the spot for the school-house, they proceeded no farther. Some conversation was also had with Millikin, in August, on the subject, and one of the committee testified that they did not propose to have the house ready for a summer school, and supposed they could build it cheaper after haying ; which evidence was excepted to by the defendants ; but admitted by the court. The committee, being unable to agree with Millikin, proceeded no farther.

The defendants objected, that the records of the meeting of the 6th day of May were not signed by the clerk, and he was permitted to sign the record in court. The defendants offered evidence of an application to them, on the 16th day of July, 1839, to issue a warrant for another meeting in the district, to be holden on the 12th day of August, 1839, for the purpose of taking further measures about the school-house ; and of a meeting holden in pursuance thereof, at which it was voted to locate the school-house on land of Mr. Baker, and to apply to the selectmen to assess a tax for the purpose of building it.

The defendants proved that they were chosen into office in March, 1839. The plaintiff objected, that the record did not show what oath was administered by the moderator, and that it was not shown that this tax was assessed upon the invoice of property for which the plaintiff was liable to be assessed. The defendants offered the plaintiff's invoice for 1839, from which it appeared that the plaintiff was assessed for real estate, stock, and money at interest ; and the plaintiff contended, that the defendants should show that the requisitions of the statute were complied with, in relation to the taxation of money at interest.

The defendants proved, that on the 15th day of August, 1839, application was made to them, by inhabitants of the district, to locate and build a school-house, and that they thereupon proceeded to locate it, and assessed this tax, among

Blake *v.* Sturtevant.

others, for that purpose. They also offered evidence tending to show that the school-house was unfit for use.

A verdict was taken for the plaintiff, for nominal damages, under the direction of the court; upon which it was agreed, that judgment should be rendered, or the verdict set aside, and the question of damages submitted to the jury, or judgment be rendered for the defendants, as the court should order.

*Wilson, & Chamberlain*, for the plaintiff.

*Edwards*, for the defendants.

UPHAM, J. Our statutes provide that each town shall annually raise a given sum, in proportion to their amount of public taxes, to be expended in support of schools, for common education and instruction.

In order to carry this provision into effect, each town is required to divide its territory into school districts, which have certain corporate powers and rights, and which are subjected to the discharge of various duties, to promote this object.

Each school district is empowered, at any meeting duly called for the purpose, to raise money for erecting, repairing, or purchasing a school-house; may locate the same at such place as they may elect, with power to take the land, by appraisal, if necessary; and may appoint a committee to carry these powers into effect. All action in this respect is, in the first place, wholly limited to the district; and it is only in case of their neglect or refusal of the due exercise of these powers, that any other body has jurisdiction upon this subject.

The particular circumstances in which this jurisdiction is transferred to others, are specifically set forth in the statute.

If the majority of the inhabitants of a school district cannot, or do not, agree on the location of a school-house, the

selectmen may, on application to them in writing, by the district committee, determine on the location of the house ; but, if the inhabitants refuse or neglect to choose a committee, or if such committee, in case of disagreement in the district, refuse or neglect to apply to the selectmen, then any three or more freeholders may apply to the selectmen in writing, requesting the selectmen to locate the building.

Or if any school district is destitute of a school-house, or it has become ruinous, and out of repair, and the inhabitants of the district refuse or neglect to build or repair the same, in such case any three of the freeholders of the district may apply in writing to the selectmen, and they are empowered to assess a tax upon the district, and proceed to erect, or repair such house. Doubts as to what constitutes neglect and refusal, on the part of the inhabitants of the district, will sometimes arise, and that in fact is the principal matter in controversy in this case.

It will be perceived, from the enumeration of the powers and duties of districts, that these powers never can be exercised, except through the intervention of agents or committees appointed by them. If they agree to build, vote to raise money, or locate their building, it all terminates in nothing, unless the duty be committed to some portion of their body, to carry their designs into effect. They may do every thing else which is necessary to be done ; but if they neglect their duty in this respect, such acts are wholly without avail.

And such is the situation of the district in this case.

In the first instance, in May, 1839, the inhabitants of the district met, and voted to raise money to build a school-house, and to locate it on the land of one Millikin, and appointed a committee of the district to carry these votes into effect. The committee, being unable to agree with Millikin as to the land, after one or two ineffectual attempts upon the subject desisted from any further action.

When a subsequent meeting of the district was called, on the 12th of August, to see what measures they would take

as to the same subject matter, one of the articles of the meeting was, " to see if the district would build a new school-house." Another article was, to see if they would vote to raise money for this purpose.

This new call, and the proceedings under it, clearly superseded all proceedings of the meeting holden on the May previous. The district, at this second meeting, passed the following votes : " 1st, To build a new school-house ; 2d, to locate the same on the corner of David Baker's land, near the guide-board ; 3d, to raise the sum of three hundred dollars, including the money raised to repair the old school-house ; and, 4th, to apply to the selectmen to build the house."

These proceedings are perfectly regular, and manifest an intention on the part of the district to go forward, of their own motion, in this enterprise, until we come to the last vote of the meeting, " to apply to the selectmen to build the house."

The design of this last vote would hardly be intelligible without some explanation ; but this appears in the testimony of Eugene S. Ellis, the clerk of the meeting. He testifies that, after passing the votes first above named, the district voted to choose a committee to build the school-house ; that two individuals were appointed, and declined, and no farther proceedings were had to obtain a committee ; but it was thereupon voted to apply to the selectmen to build the house.

It appears, then, that owing to the difficulty in procuring a committee, the whole proceedings of the meeting failed. No agents were appointed to carry any of the previous votes into effect, and all action, or design of action, on the part of the district, ceased ; and from their inability to proceed, the whole matter was committed by vote to the selectmen. Owing to this disagreement, or refusal to act, there was a clear neglect on the part of the district to go forward in what had throughout been conceded to be their duty, in erecting a new school-house instead of the old one, which had become ruinous, and inadequate to the proper wants of the district.

This evidence of neglect we consider abundantly sufficient to give jurisdiction to the selectmen, when properly applied to ; and such application was duly made to them in writing, by six freeholders of the district, on the 15th of August, 1839.

In pursuance of this application, the selectmen assessed a tax and proceeded to locate and build the house. We think, therefore, that the jurisdiction of the selectmen, upon the subject matter of assessing the tax, is well shown.

It is contended, however, that there is no sufficient evidence of an assessment of the tax on the true invoice of the plaintiff. There is no doubt that the invoice must be taken in conformity to the statute. The defendants offered the plaintiff's invoice, from which it appeared the plaintiff was assessed for real estate, stock, and money at interest ; but no evidence was submitted as to the manner in which the invoice was taken ; but this is immaterial. The selectmen, in the assessment of taxes against the plaintiff, acted in the discharge of an official duty in a matter fully within their jurisdiction. There is nothing apparent upon the record to show any illegality in their proceedings, and the necessary presumption is, that the requisitions of the statute have been complied with. We cannot go behind the record of the invoice to presume an error or informality in the amount or description of property returned ; but where it appears by the records of the selectmen, that a tax was duly made from an invoice of an individual, as recorded in their books, the property will be regarded as *prima facie* duly invoiced, until the contrary is shown.

The suit being against the selectmen for an illegal assessment, they must not only show jurisdiction, and a due assessment of the tax on their part, but that they were duly elected and qualified to act ;—in other words, that they are officers *de jure.* There is evidence of a proper election of the defendants, at a meeting duly holden ; but there is no evidence that the oath prescribed by law, for the proper discharge of their duty as selectmen, was taken by the defendants.

In *Cardigan* vs. *Page*, 6 *N. H. Rep.* 191, Ch. Jus. Richardson remarks, " it does not appear that the collector, by whom the land was sold for taxes, took the proper oath of office. The record only shows that he was sworn into office ; in what manner does not appear. In order to render a sale of land by him valid, it must appear that he took the oath of office by law prescribed."

This case is qualified now in those instances where third parties are interested, where it is merely necessary to show an officer *de facto ;* but the rule is correctly laid down in all cases where an individual must be shown as an officer *de jure.*

Opportunity will be given the defendants to amend the record, so that the nature of the oath administered shall appear ; and if this exception be obviated, the defendants will be entitled to judgment.

*Judgment for the defendants.*