SCHOOL DISTRICT No. 1, IN DANVILLE *v.* SANBORN & A.

The power of selectmen to apportion school money among the several school districts in a town is a continuing power, to be exercised from time to time, whenever it may be necessary, from changes made in the districts, in order to give to each district the benefit of the tax paid by its members.

DEBT, for penalties. The first count alleged that the defendants were duly chosen selectmen of Danville for the year 1847, accepted, were qualified, and executed the office. They duly assessed a school tax, and on the first of May assigned to the several school districts their proportions, and to district No. 1 $88,12, being their legal proportion; that

School District No. 1, in Danville *v.* Sanborn.

a prudential school committee was chosen by the district, who accepted the office, and was legally authorized to receive the money, was ready to receive it, and on the 14th of March, 1848, requested the defendants to pay it over to him, but that they have not paid the full proportion of school money assigned to said district, but neglected to pay over $40,66, whereby they have forfeited to the plaintiffs that sum, &c.

The second count alleged the election, &c., of the defendants, and assessment of the tax, as in the first, and that the proportion to which district No. 1 was entitled was $88,12; that the defendants did not assign to that district their full proportion, but neglected to assign to them $40,66 of that sum, by which, &c.

It did not allege any request to assign, nor that there was a prudential committee authorized to receive the money.

Plea, *nil debet*, with a brief statement that the defendants would deny that there was such a corporation as the plaintiffs.

To show the division of the town into districts, the plaintiff produced a record of a warrant and town meeting in May, 1834, but the record was not certified by the town clerk. The record of the return upon the warrant stated that it was posted at the old meeting-house. A witness testified that he was in the habit of attending town and religious meetings at that meeting-house; that usually, and in all cases when he had taken notice, the warrants for town meetings were posted on the inside of the front door of the meeting-house; but that he had no recollection how the warrant for this meeting was posted. In the season of bad weather, there was not usually any meeting on Sundays, but there usually were such meetings in May and June. The defendants objected that the meeting was not duly warned, and that the record was not certified.

The plaintiffs, to prove the election of the defendants as selectmen, produced the town record. It was there stated

that the moderator " took the oath of office." The defendants objected that this did not show that he took the oath prescribed by law.

To prove the assignment of school money, they produced the collector's warrant, directing him to pay over to district No. 1 $88,12.

To prove the choice of the prudential committee, they produced the district records, showing the choice in March. It appeared the warrant was posted up,—not a copy. The defendants objected to the meeting for that cause. They also showed his appointment, by the selectmen, as prudential committee in May. The committee, J. Philbrook, testified that he received from the collector $47,46 for the district, and nothing more; that at the March meeting, 1848, when the selectmen were together, and before the meeting was opened, he demanded of them the sum of $40,66, to which they made no reply. He testified that it ran in his mind that he presented to the selectmen a certificate of the superintending school committee, that the female teacher he employed was qualified to teach; but he could not swear that he did. He testified that afterwards, and after the master commenced his school, he presented to Sanborn, one of the selectmen, a certificate of the superintending committee that he was qualified to teach, and demanded of him the $40,66, balance unpaid of $88,12. The other selectmen were not present. The certificate was shown to be lost, but the witness proved its contents.

He presented no certificate when he made the demand of the three selectmen in March, 1848.

The defendants produced a record of the town meeting, at which they were elected selectmen, March 9, 1847. The warrant contained an article to divide district No. 1 by a line, beginning at the north side of the district, and extending south across the district to the south line; but mentioning no other bound of the district, or of either of its proposed parts. It was declared a vote to divide school district No. 1; and voted that

all east of the division line of No. 1, be called school district No. 4.

They also produced a record of a town meeting, held June 14th, 1847, on a warrant containing an article to divide the same district by a line the same as that in the previous warrant, to the south line of the district, then describing the bounds of district No. 1, so far as they lie east of this line, and the territory within those lines to compose district No. 4. The vote was to divide school district No. 1, agreeably to the article.

The two divisions embraced the same territory. The plaintiffs produced a record of a town meeting, April 5, 1847, at which it was voted that all the territory lying east of district No. 1, bounded northerly on Poplin line, eastwardly on Kingston line, southwardly and westwardly on district No. 2, should be annexed to district No. 1. This description included the whole of district No. 4.

The sum of $88,12 was the sum to which district No. 1 was entitled before the new district was set off, and $40,66 was the legal proportion of district No. 4, if it was entitled to any assignment of school money.

In August, before any of the money was collected, the selectmen revoked their order to the collector, contained in his warrant, and directed him to pay $47,46 to the first district, and $40,66, to the fourth district. The latter sum was paid by the collector to the prudential committee of district No. 4, and expended there for the support of a school.

It was agreed that the court should direct a verdict for the plaintiff; to be set aside and a verdict entered for the defendants, if the superior court should be of opinion that the direction was incorrect.

*Stickney* and *Tuck*, for the plaintiffs.

*Wells*, for the defendants.

BELL, J.   The claims of the plaintiffs, out of which this action for penalties grows, have no foundation in justice. It is a claim to apply for the benefit of those who remain inhabitants of school district No. 1, the whole tax collected of the inhabitants of No. 1, and of the new district No. 4, which was severed from No. 1, a few days before or after the tax was assessed, and before any part had been expended for the common benefit.

The general principle in relation to the application of school money is, that each district is entitled to the benefit of the money raised from the inhabitants of it, for the support of its schools.   This is the equitable rule; yet if by the statute the plaintiffs are entitled to the advantage they claim, it must be allowed them.

Chapter 72 of the Revised Statutes prescribes the duties of the selectmen in relation to this subject.   Section 1 directs the selectmen to assess a school tax, &c.   Section 4 provides that the selectmen shall assign to each district a proportion of the money thus assessed, according to the valuation of the district for the year, and shall pay over the same to the prudential committee of the district.   And by section 5, if the selectmen of any town shall neglect to assess, or assign, or pay over the school money as aforesaid, they shall forfeit and pay for each neglect a sum equal to that so neglected to be assessed, or assigned, or paid over, &c.

By the theory of the plaintiffs, this power of the selectmen is to be exercised at once, and all power of theirs over the subject is at an end, and nothing remains for them to do but to pay over the money agreeably to such assignment; and they rely on the direction of the collector's warrant to pay to school district No. 1 $88,12, as establishing the fact of an assignment to them of that sum, and, consequently, their title to the money.   But we conceive that as the assignment is to be made, not according to any discretion of the selectmen, but upon the valuation of the district for the year, the title of the district does not depend upon

School District No. 1, in Danville *v.* Sanborn.

the assignment of the selectmen, and is not affected by it. Neither do we understand that there is any limitation or restriction in this statute, which confines the exercise of the power to make such assignment to a single point of time, or to a single decision. The policy of the law clearly is, that the taxes collected from each district shall be applied for the benefit of the inhabitants of that district, in maintaining their schools. To carry out this policy, where districts are divided, (and they are liable to be divided at any moment, at the pleasure of the town,) it is necessary that the selectmen should have the power, and be subject to the duty, of assigning the school money among districts, newly constituted or changed, according to the valuations of the inhabitants of the several districts at the time the assignment is to be made.

If the assignment is to be made between two districts, newly constituted out of one old district before any part of it has been expended for the common benefit upon the schools, the whole money is to be divided. If a part of the money which belongs to the old district, has been expended, or, which is the same thing, has been applied to the common benefit of the entire district in supporting the schools, then only the residue of the money is to be divided. Upon this principle, all the inhabitants of each district continue to receive the benefit of the money they have themselves paid, in the education of their own families.

We have been able, after careful consideration, to discover nothing in the statute which in any way conflicts with this construction. And every chance of injustice and wrong is obviated by regarding the authority of the selectmen, as we do regard it, as a continuing power, to be exercised *toties quoties*, whenever any change in the district shall render it necessary to give to each tax payer the benefit of his own school money in the district in which he lives.

Our opinion upon this point supersedes the necessity of inquiring into any of the numerous questions raised by the

case, except that relating to the setting off of the new district. If that is void, the defence of course fails. The first vote passed by the town for this purpose, was at a meeting, March 9, 1847. Two objections are taken to the proceeding. First, that the record states that the moderator "took the oath of office," which, it is objected, does not show that he took the oath of office prescribed by law. The cases cited by the plantiff support his objection; *Proprietors of Cardigan* v. *Page*, 6 N. H. Rep. 184; *Blake* v. *Sturtevant*, 12 N. H. Rep. 567; though if the question were new, we might hesitate in coming to that conclusion. But this objection is sufficiently met by the last case, where the familiar principle is recognized, that in cases between third persons, it is enough to show that the party is an acting officer. The second seems to be, that the description of the new district was insufficient. The line of division is described as beginning at a point in the north line of the district, and extending to the south line of the district;—and the vote was, that all of the old district east of that line should be district No. 4. There seems to us to be nothing in this exception, and it does not seem to be insisted upon.

A second vote was passed, June 14, 1847, establishing this district. To this proceeding we have discovered no objection. The case would not be changed if we regarded this vote as the real setting off of the new district, since, though there was a school kept a few days previous, it does not appear that it was taught by a qualified teacher, so that any part of the moneys raised in the district could be lawfully applied to its support.

The plaintiff having failed to sustain his cause of action, according to the agreement of the parties the verdict must be set aside, and there must be

*Judgment for the defendants.*