### IN THE

# SUPERIOR COURT OF JUDICATURE,

#### FOR THE

## COUNTY OF GRAFTON, JULY TERM,

### A. D. 1833.

---

## THE PROPRIETORS OF CARDIGAN *versus* JEREMIAH PAGE.

When a town meeting is warned by a warrant posted up by the selectmen, they must make a return stating the time when and the place where, it was posted up. And such return is the only evidence that can be received to prove the warrant duly posted up.

When a title to real estate is derived from a collector's sale, for taxes, it must appear by record that he took the oath of office by law prescribed, otherwise the sale is void.

It is an incorrect practice, in towns, to set up the office of collector at auction.

The grant of a state tax is proved by the statute books. The grant of a county tax must be proved by the record of the doings of the county convention.

A vote, by a town, to raise two dollars on each poll, and on other estate in proportion, for a highway tax, is a legal vote.

In the list of non-resident taxes it is not necessary to state that the original

proprietor and owner are unknown, where the fact is so.  When their names are not stated in the list, they will be presumed to be unknown until the contrary appear.

The list of assessments, in such a case, must be delivered to the collector before the 30th May ; and a copy of the invoice must be left with the town clerk.

When a collector sells land for taxes, it must be at auction, to the highest bidder ; and a copy of the sale must be lodged with the town clerk, within ten days, after the sale.  But the account of the sale need not be made by the collector.  It may be made by his clerk.  It is not a valid objection to his proceedings that the expenses of the sale are not specified.

This was a writ of entry, brought to recover a tract of land in Alexandria, which the demandants claimed to hold by virtue of their charter, which was dated, February 6, 1769.

The tenant claimed to hold the land by virtue of a deed, made by Samuel Cole, collector of taxes for the town of Alexandria, in the year 1822, who sold the land to Moses George, to pay taxes assessed upon it that year.

The parties agreed to submit the validity of the tenant's title, which he deduced from the said George, to the decision of the court, upon the following facts.

The treasurer of the state duly issued his warrant, dated 2d January, 1822, requiring the selectmen of Alexandria to assess, upon the polls and estates in that town, the sum of $66,30.

The treasurer of the county issued his warrant, dated February 25, 1822, requiring the selectmen of Alexandria to assess, upon the polls and estates in that town, the sum of $63,09.

On the 14th February, 1822, the selectmen of Alexandria made a warrant for a town meeting, to be holden in that town on the 12th March, that year.

This warrant was directed as follows.

" STATE OF NEW-HAMPSHIRE.  GRAFTON, ss.

These are to notify and warn the freeholders and other inhabitants in the town of Alexandria, who are quali-

fied to vote in town affairs, to assemble and meet at the meeting house in said town, on Tuesday the 12th March next, &c.

On the back of the warrant was a certificate, as follows : " March 12, 1822, lawfully posted a true copy of the within articles.

D. ATWOOD, } *Selectmen.*"
S. COLE, }

In the record of the town meeting, March 12, 1822, were, among other things, the following votes.

" Then the collection of taxes was set up and struck off to Samuel Cole, who is to have one half cent on the dollar for collecting them."

" Chose Samuel Cole collector of taxes the ensuing year, and he was sworn into that office."

" *Voted*, That the town raise $250, to defray town expenses."

" *Voted*, To raise $100 in addition to the school money that the law allows."

On the 8th article in the warrant for holding the meeting, which was as follows,

" To see how much money the town will raise to make and repair highways the ensuing year,"

The town voted, " that the town raise two dollars on the poll, and other estate in proportion'; and if worked out in June $1,00 per day ; after that sixty-seven cents per day till the first day of October."

The list of the assessments of nonresident taxes, which was recorded in the town book, began thus,—

" Nonresident land tax in Alexandria, for 1822." Towards the end of the list was this memorandum—" The following lots are taxed according to their allotment by the proprietors of Plymouth and under their claims."

In the first column, under this memorandum, on the left hand, were, what appeared to be the names of persons, but it was not stated, whether they were the names of the owners, or of the original proprietors.

Against these names, towards the right, was written Pr. of Cardi.<br>v.<br>Page. the number of the lot, the division, the quantity of land, the value of the unimproved land and the amount of the several taxes.

Against the several lots, No's. 7, 8, 9, 10, 11, 12, 13, 14, and 15, in the first division, was written, in the said first column, instead of a name, the word "unknown."

A warrant was issued by the selectmen, dated, May 27, 1822, directed to Samuel Cole, collector, requiring him to collect the taxes. But there was no evidence that the list of assessments was delivered to the collector, on or before the 30th May, 1822, except, that one of the selectmen for that year testified, that he had no doubt that the list of assessments was put into the collector's hands in the month of May.

The evidence, as to the sale of the lots, on the 31st January, 1823, by the collector, was a copy of a record of the proceedings, at the vendue, drawn up by David Atwood, a sworn clerk, as follows.

"A record of Samuel Cole's vendue of non-resident land in Alexandria, for the taxes assessed, in 1822. Cost on each piece of land is forty six cents. This vendue was opened at ten minutes past eleven o'clock, A. M."

It then stated that lots No. 7, 8, 9, 10, 11, 12, 13, 14 and 15 were severally set up, and each struck off to Moses George, for taxes and costs $1,01. It then proceeded—"This vendue was dissolved thirty minutes before six o'clock in the afternoon.

This is a legal return,

DAVID ATWOOD, *clerk of the said vendue.*

A true copy,

attest, SAMUEL COLE, *vendue master.*"

The copy, thus attested, was filed with the town clerk, and a copy of that, attested by the town clerk, was used in this case.

David Atwood testified that he was clerk of the sale, and presumed it took place according to the record.

Samuel Cole, the collector, by deed, dated July 2, 1824, conveyed lots No's. 7, 8, 9, 10, 11, 12, 13, 14 and 15, in the first division, to Moses George.

A copy of the list of non-resident taxes was sent to the deputy secretary, in June, and having remained there until the fall of the year, was returned to the collector. And the lands were advertised for sale in the usual mode. But as no question has been made, with respect to these proceedings, it is deemed unnecessary to state the particulars.

On the part of the demandants it was argued at the last term, by *J. Parker* and *Bell*, that, to sustain the sale of the land for taxes, it must be shown, affirmatively, that the law of the land had been substantially pursued. 3 N. H. Rep. 340, *Waldron*, v. *Tuttle* ; 8 Pick. 439, *Holden* v. *Eaton* ; 7 Cowen, 88, *Jackson* v. *Shephard* ; 3 N. H. Rep. 105, *Brown* v. *Dinsmoor*.

This is not done in this case. The tenant has failed to show, in several essential particulars, that the law of the land has been pursued.

1. The case does not show a legal town meeting in Alexandria, on the 12th March, 1822, at which officers could be chosen, or taxes raised.

By the statute of December 13, 1804, which remained in force until after the year 1822, selectmen were authorized to warn meetings in their respective towns, by posting up the warrant. The certificate of the selectmen, in this case, only shows, that a copy of the articles was posted up. It does not state when, nor where, the copy of the articles was posted up. It in no way appears that the warrant was posted up at some public place in the town fifteen days prior to the day of the meeting.

It was not for the selectmen to settle whether the posting was lawfully done. The facts should have been stated. 9 Mass. Rep. 242, *Davis* v. *Maynard* ; 1 ditto, 86, *Lancaster* v. *Pope* ; 4 N. H. Rep. 34, *Goodwin* v. *Smith* ; 5 Connecticut Rep. 400, *Metcalf* v. *Gillet*.

II. There is no evidence that a collector of taxes was legally chosen in Alexandria, for the year 1822, or that Cole, who acted as collector, was sworn. Cole was not appointed by the selectmen ; but the office was, in town meeting, put up at auction, which is contrary to the policy of the law, as tending to introduce unsuitable persons into office. And although the town, after it was struck off, went through the formality of choosing the person to whom they had sold the office, that does not obviate the objection. 2 N. H. Rep. 517, *Meredith* v. *Ladd* ; 5 N. H. Rep. 196, *Carlton* v. *Whittier* ; Bacon's Ab. Offices and Officers, F ; Noys' Rep. 102, *Stockwell* v. *North*.

There is no evidence that Cole took the oath by law prescribed. Admitting the clerk's record to be evidence, it does not show that Cole took the proper oath. 11 Mass. Rep. 481, *Welles* v. *Battelle*.

III. There is no evidence of any grant of the state and county taxes, which were included in the assessment. It is necessary that the person, claiming to hold under the sale, should show the grant of the tax as well as the legality of its assessment. No recital, in a treasurer's warrant, is enough for this purpose. 3 Greenleaf's Rep. 302, *Mussey* v. *White*.

IV. The vote, on the 8th article in the warrant, for raising a highway tax, is insufficient and void ; inasmuch as it sets forth no sum to be raised, and is prospectively contingent, and is therefore not authorized by law.

The town was by law authorized only to raise a sum or sums certain for this purpose. The maxim, *id certum est quod certum reddi potest*, cannot apply here. For it could not then be ascertained what sum the town had voted. The sum to be raised was made to depend upon the contingency, how many polls and what taxable estate there might be within the town, on the first day of April following. There is no provision of law authorizing towns thus to raise money. This part of the taxes

Pr. of Cardi.　being illegal, the whole sale is void.　1 Greenl. 339, *El-*
　v.
Page.　*well* v. *Shaw.*

V. The list of assessments is not according to law.　It contains neither the name of the owner, nor of the original proprietor ; nor does it state that the name of the owner, or of the original proprietor, is unknown.　In the column of names is the word " unknown," but it is no where stated what names that column contains.

VI. It does not appear, that a copy of the invoice, from which the assessment was made, was recorded, or left with the town clerk, as the law required.　Until this was done it was illegal to proceed to collect the taxes. 14 Mass. Rep. 177, *Blossom* v. *Cannon* ; 1 Pick. 482, *Thayer* v. *Stearns* ; 3 Mass. Rep. 429, *Thurston* v. *Little* ; 4 D. & E. 368, *The King* v. *Newcomb.*

VII. There was not sufficient evidence to show that the list of assessments was delivered to Cole, on or before the 30th May, 1822.　The statute requires that it should be so delivered, and every person whose lands are taxed has a right to insist on this provision.　It is for his benefit, to enable him to pay his tax to the collector without expense.

VIII. The sale of the lots is of itself void.　The items of the cost are not specified.　The collector is by law bound to make out an equal proportion of the cost. Each owner has a right to be informed what items of incidental charges go to make out his proportion.

In the next place the several lots were set up and struck off for taxes and cost, which is not a legal mode of making the sale.　So much, only, of the estate as will be sufficient to pay the taxes and charges, is to be sold. The bidding should be so much per acre.　Here it only appears that the whole lot was sold for taxes and cost ; but it does not appear that it was necessary to sell the whole.

And, further, it does not appear that the lots were sold at public auction to the highest bidder.

IX. The record of the vendue is no evidence. It was Pr. of Cardi.
v.
Page. made by David Atwood, a mere servant, under no responsibility.

*Bliss* and *I. Bartlett*, for the tenant.

RICHARDSON, C. J. delivered the opinion of the court.

The first objection to the tenant's title, in this case, is, that the town meeting, holden in Alexandria, on the 12th March, 1822, at which the collector was chosen, and a part of the taxes, for which the land was sold, voted to be raised, does not appear to have been legally warned. This objection is well founded. It does not appear that any legal notice of the meeting was given to the inhabitants of the town. The certificate of the selectmen states neither the time when, nor the place where, the copy of the articles was posted up. It is wholly insufficient. When meetings are warned by selectmen, they must make a proper return of their doings. They stand, in that business in the place of constables, and their return must show, not simply that notice has been given, but that such notice as the statute directs has been given. They are public officers, authorized by law to warn town meetings. It is their duty to make a return of their doings. If they make a false return they are liable to an action in favor of him who may be thereby injured. And, in our opinion, their return is, in this instance, the only evidence which can be admitted to prove what they have done.

It has been urged by counsel, in this case, that great mischief must follow a decision that the return of selectmen is the only evidence that can be admitted in these cases to prove a town meeting legally warned. And we have no doubt that the practice of selectmen, in relation to their returns, has been very loose. But the time has come when it seems to us to be necessary that the practice of selectmen, in this particular, should be corrected; and in our opinion much greater mischief will result from giving countenance to the careless and imperfect returns

Pr. of Cardi.
v.
Page.

which have already been made, than from holding a legal and sufficient return to be essentially necessary in all cases. In most cases, an imperfect return can be amended, and if the facts will warrant it, a good return be made. But it has been said, in the argument of this case, that the selectmen may die, and then the return cannot be amended. This is true. It is however to be remembered, on the other hand, that all who have any knowledge of the time when a warrant was posted up, may also die, and then, if there be no return, all evidence of the fact is lost.

It is neither safe, nor expedient, to leave the title to real estate to depend, in any case, upon the uncertain and fading recollection of mortal men. It is not the policy of this state to do so. All conveyances by one man to another must be in writing. When an execution is extended upon land, there must be a return in writing, otherwise it is without effect.

When lands are sold for taxes, the former owner ought to be able to learn, from the records of the proceedings, whether his title has been lost. He ought not to be put to the expense of a lawsuit to learn whether his land has been legally sold.

It is, in our opinion, much better that a few titles should now fail for this defect than that all titles of this description should be left in doubt and uncertainty. As soon as the law, on this subject, is understood, the practice will be corrected. As soon as it is understood to be settled that there must be a return, stating the time when the warrant was posted up, and the place where, which must appear to be a public place, the returns will be at once correct in these particulars.

Another objection to the tenant's title, is, that it does not appear that the collector was legally appointed, or duly sworn.

We are of opinion, that the practice of setting up, at auction, the office of collector of taxes, and of choosing

him who will serve most cheaply, is incorrect. A proper choice should be made by the town, and the compensation be left to be settled by the selectmen. No person can be compelled to serve as collector. But suitable persons may be found, who will be willing to serve for a reasonable compensation. What effect the circumstance, that the office was set up at auction, in this case, ought to have upon the appointment, we shall not examine. However that may be, it does not appear that he took the proper oath of office. The record only shows that he was sworn into office. In what manner he was sworn does not appear. In order to render a sale of land, by him, for taxes, valid, it must appear that he took the oath of office, by law prescribed. 3 N. H. Rep. 413.

It is further objected, to the tenant's title, that there is no evidence of any grant of the state and county taxes. With respect to the state tax the objection is not well founded. It appears, by the statute of June 27, 1821, which is published among the public acts, that the sum of $30,000 was ordered to be raised for the use of the state, and to be collected and paid into the treasury on, or before, the 1st December, 1822. Of this statute we are bound to take notice.

But [with respect to the county tax the objection is well taken. The representatives in the general court, of the several towns in each county, are, by law, authorized to form a convention and raise county taxes.— A record of the doings of such a convention is the only evidence to show a county tax duly granted. There is no such evidence in this case.

An exception has been taken, in this case, to the vote to raise the highway tax. It has been argued that the town was authorized only to raise a sum certain for the purpose of making and repairing highways. But it does not seem to us that the statute, authorizing towns to raise money for that purpose, is to be so construed. It

is made the duty of towns to raise money to repair highways, but the amount is left to their discretion. They *may* vote a sum certain, and we see no reason why they may not vote to raise the money in the manner that was adopted in this case. A proper sum is as likely to be obtained by laying a particular amount on each poll, and on other things that are taxable, in the same proportion, as in any other way. We are therefore of opinion that this exception is not well taken.

It is also objected, that it does not appear that the land was sold at auction, to the highest bidder. This objection is well founded ; and it is very clear that, until this objection can be removed, the title of the tenant cannot be held to be valid.

It has been insisted that the list of assessments is not according to law, because the names of the original proprietor, and the owner are omitted, and it is not stated that they are unknown. But we are of opinion that the list of assessments is well enough. The number of the lot, and division, is stated, and we think it is not to be presumed that the names of the original proprietor, and of the owner were known. If it was shown that the names of the original proprietor, and of the owner, were known to the selectmen, the list must be adjudged insufficient. For the statute expressly requires their names to be inserted, if known.

It does not appear, in this case, that a copy of the invoice was recorded, or left with the town clerk for that purpose ; and upon this the demandants rely as a fatal objection to the proceedings. The statute requires, that a copy of the invoice be left with the town clerk, in order that the inhabitants may inspect the same. To render a tax legal, this provision, which was introduced for the benefit of those, who may be taxed, must be followed. This objection is well founded.

It is also a fatal objection to the legality of the proceedings, that it was not shown that the collector had

the list, on or before the 30th May, 1822.  The statute required that he should have it before that time.

It is further objected that the expenses of the sale are not specified.  But the statute does not require this.— The expenses are to be apportioned among the lots sold. In this case the amount of the expense, for each lot, is stated, and we are of opinion that the amount must be presumed to be correct until the contrary appears.

Indeed, it is not clear that the sale would be void, if the fees taken exceeded what the law allows.  It would subject the collector to an action for the forfeiture which the statute imposes for taking illegal fees in such a case. He might also be compelled to refund what had been illegally taken.  But we are not prepared to hold, that it would render the sale void.

It has been argued that the copy of the sale, which the collector delivered to the town clerk, was not a proper one.  The objection is, that it was made by the collector's clerk instead of the collector.  It is without doubt necessary that a copy of the sale be lodged with the town clerk, within ten days after the sale, in order that the owner of the land may have an opportunity to redeem by paying the taxes and expenses.  But it is not required that the account of the sales should be made up by the collector.  It is enough that he leaves with the clerk of the town a copy of the sales, as stated by the clerk, if the copy be attested by himself.  If the account be made by his clerk, it is well enough if he adopt it. And his filing with the town clerk a copy is a sufficient adoption of it.

It thus appears, that the tenant has failed, in various particulars, to show a legal sale of the land, and unless the objections to his title can be removed by further proof, it cannot avail him.