# COOS,

## AUGUST TERM, A. D. 1845.

---

## WELLS *v.* BURBANK & a.

The grant or charter of a township does not constitute the grantees, nor the inhabitants, a town corporation. The grantees are *quasi* a corporation, for the sale and partition of their lands.

Under the statute of 1831, chapter 32, the treasurer of the State had authority to issue a warrant for the collection of a tax upon an unincorporated place which had no inhabitants; and that statute was not repealed, or affected by the statute of 1833, chapter 108, providing for the assessment of taxes in towns.

The legislature having, by general statute, prescribed the proportion which each town and place should pay, of each thousand dollars of the public taxes, and having subsequently passed an act to raise a certain sum for the use of the State, and directed the treasurer to issue his warrants to the selectmen; — *Held*, that no formal assessment was necessary for the purpose of levying the proportion of an unincorporated place which had not been divided among the proprietors. The treasurer's warrant for the collection of the proportion of such place, as ascertained by the two acts of the legislature, is a sufficient assessment.

Where a statute provides for raising a State tax, and directs that the money shall be collected and paid into the treasury within a certain time, the part of the act prescribing the time is directory, and if the tax is assessed after the time, the assessment is not therefore invalid.

If the treasurer, in the assessment of a tax, charges a fee for the warrant, which is not authorized by law, it will not vitiate a sale of the land made to satisfy the tax and costs.

Where a single sum is assessed upon an unincorporated place, the treasurer's warrant for the collection of the sum assessed, filed in the office of the secretary of State, is a sufficient "list" of the taxes for that purpose.

The certificate of the deputy secretary of State, of the time when a list non-resident taxes is filed in his office, is sufficient evidence of that fact

and where it thus appears that it was filed in due season, it may be presumed that the list remained there during the time required by law, if there is nothing to rebut such presumption.

Where the sheriff deposits in the office of the clerk of this court the advertisements and other papers showing his proceedings in making a sale of land for taxes, copies of such papers are not evidence, farther than the originals would be evidence, if produced; and a certificate by the sheriff that he had posted a certain advertisement at a certain time and place is not competent evidence.

It is not necessary to post an advertisement of a sale for taxes in an unincorporated place which is uninhabited.

A part owner of an unincorporated place, which was undivided, having paid to the deputy secretary a part of the tax upon such place, without any designation of the number of acres which he claimed; a sale of the residue of the township not paid on, for the amount of the tax and costs remaining unpaid, is sufficiently certain.

The assessment of a larger tax than is authorized by law is void, and there can be no valid sale for the collection of it.

Where, in a case upon trial, the evidence has been closed, and the parties have agreed to take a verdict, subject to the opinion of the court; it is within the discretion of the court whether the case shall be opened for the introduction of further testimony. This court cannot revise the exercise of such discretion.

TRESPASS, for breaking and entering the plaintiff's close in the township of Success, and cutting and carrying away certain pine trees, &c. Plea, the general issue.

The plaintiff offered evidence to show the cutting of timber upon the *locus in quo*, sufficient to support the action, if he had a title. He claimed title under a sale for State taxes, made by the sheriff of the county of Coös, January 4, 1842, and a like sale for county taxes on the following day; and he offered in evidence:

1. The charter or grant of the township of Success, dated February 12, 1773, in the usual form of such grants.

2. A copy from the office of the clerk of the superior court, of a copy of a warrant of the State treasurer, dated April 30, 1841, directed to the sheriff of Coös, reciting that by an act of the legislature, passed July 6, 1839, it was provided that the sum of $40,000 should be raised

for the use of the State, to be assessed, collected and paid into the treasury on or before the first day of December, 1840, and that the proportion of Success, a place unincorporated, and having so few inhabitants as to be incapable of choosing town officers, was $8, which had been assessed upon and proportioned to that place ; and empowering the sheriff to collect that sum, with $1 for the warrant, and to cause the same to be paid and satisfied to the treasurer of the State for the time being.   The copy purported to have been certified by the sheriff; and there was on it the certificate of the deputy secretary of State, "Received June 1, 1841."   Also an indorsement that fifteen cents of the tax was paid by Mr. Hall, of Portsmouth, no number of acres named.

3. Copy, from the clerk's office, of an advertisement signed by the sheriff, dated September 14, 1841, notifying the proprietors and owners of the township of Success that so much of it would be sold at public vendue, at the Coös hotel, in Lancaster, on the 4th of January, then next, at ten o'clock in the forenoon, as would satisfy the warrant, &c., and incidental charges, unless prevented by previous payment — fifteen cents having been paid by Mr. Hall, of Portsmouth, to the deputy secretary, no number of acres named.   Also a copy of a certificate thereon by the sheriff, dated January 4, 1841, that he posted the advertisement in the bar-room of the hotel, September 21, 1841, and took the same down January 4, 1842, and a copy of a certificate thereon by a justice of the peace, dated January 4, 1841, that the sheriff made oath before him to the truth of the certificate.

4. Copy, from the clerk's office, of a like advertisement, with a certificate of one Isaac Hagar under oath, that he posted the same in Success, on a white pine tree, near a dam, as public a place as any in the township, stating the dates of posting up and taking down the same.

It was admitted that the township was uninhabited, and

was mostly a wilderness, but there was some cleared land occupied as a pasture, and a dam across the stream, to raise the water for the convenience of floating timber.

5. Similar copies of advertisements of the sale, published in the Coös County Democrat, printed in Lancaster, and in the New-Hampshire Patriot, printed in Concord; describing the property to be sold, in the same manner as it was described in the advertisement posted in Lancaster.

6. A copy from the same office, of the record of the sheriff's sale on the 4th of January, 1842, as filed in the clerk's office, January 6, 1842, by which it appeared that the tract of land called Success was put up and offered for sale, for the payment of the State tax and incidental charges, amounting, after deducting the fifteen cents paid by Mr. Hall, to $32.95 ; that the plaintiff offered to pay that sum for the whole of the township, except what had been paid on or before the sale by Hall, and bid that sum for the same ; and no person appearing to pay said sum for a less quantity of the land, the whole of the tract not paid on was struck off to him before 6 o'clock P. M.

7. A deed in due form, from the sheriff to the plaintiff, dated January 6, 1843, recorded January 12, 1843, conveying the tract as thus purchased.

8. Copy from the same office, of a list of lands not redeemed, which were sold January 4, 1842, dated January 10, 1843, signed by the sheriff, and filed January 13, 1843, by which it appeared that no part of Success so sold had been redeemed.

The defendants objected to the validity of these proceedings for several reasons, which are stated in the argument of their counsel.

The plaintiff claimed title to the *locus in quo* under a sale by the sheriff, January 5, 1842, for the non-payment of county taxes on the same land ; and offered in evidence a vote of the members of the House of Representatives for the county of Coös, assembled in convention at Con-

cord, June 12, 1839, that the sum of $2,000 be raised as a county tax for the year 1840; with a warrant by the treasurer of the county, issued February 15, 1841, and similar evidence of the proceedings by the sheriff for the collection of the tax.

The defendants objected that, under the proportion act of 1836, the assessment by the county treasurer was for nine cents too much, and under the proportion act of 1840 sixty-eight cents too much, and that the assessment was therefore void.

To the other proceedings they took similar objections to those which they made to the proceedings for the collection of the State tax.

Upon this evidence a verdict was taken for the plaintiff, by consent, subject to the opinion of this court.

After the court had directed the verdict to be drawn up, under this agreement, but before it was actually taken, and both the parties had separated, the defendants offered to prove that John Bellows and Thomas Carlisle attended at the sheriff's sale, for the purpose of bidding, each upon his own account; that, upon learning each other's purposes, it was agreed between the plaintiff and Bellows and Carlisle, that Bellows and Carlisle should not bid, but that the plaintiff should purchase the township for the benefit of the three, and that this agreement was carried into effect. The court refused to open the case anew, and rejected the evidence.

*Bellows*, for the defendant. I. 1. The State treasurer had no power to assess a tax and issue a warrant.

By the laws of June session, 1831, the treasurer may assess taxes upon unincorporated places, or places having so few inhabitants as to be incapable of choosing town officers.

By the law of November session, 1833, all public taxes are to be assessed upon polls and ratable estates, both real

and personal, and the second section of the act provided for an appraisal by the selectmen or assessors of the several towns and places, at its full and true value in money, &c. This repeals the power of the State treasurer.

As the treasurer cannot tax the property according to the policy of the law, it must not be taxed at all.

2. Success was incorporated as much as any town. It was chartered February 12, 1773, which, according to the popular acceptation, constitutes an incorporation.

3. The money was voted July 6, 1839, to be assessed, collected, and paid on or before December 1, 1840.

There is no evidence of assessment, except a warrant which is dated April 30, 1841. The tax could not be legally assessed so late.

4. No assessment in due form was produced. The warrant recites that $8 has been assessed. See *Foxcroft* v. *Nevins,* 4 Greenl. 72.

There is no description of the property taxed in the warrant, which must be given by selectmen or assessors in the case of non-resident land, and of course by the treasurer, when he is substituted.

5. The charge of $1 for the warrant is illegal, and avoids the sale. *Brackett* v. *Whidden,* 3 N. H. Rep. 17; 13 Mass. 272; 1 Mass. 181; 5 Mass. 547; 15 Mass. 144.

6. It did not appear that any list was sent to the deputy secretary. Nothing was sent but the warrant, and the certificate upon that is dated September 3, and states that it was left June 1, but does not state that it was retained in the interval, or where it was kept.

7. There was no evidence of notice posted up in Lancaster, as required by law.

8. The affidavit of Hagar, he being alive, was not competent to prove posting in Success. The statute explicitly requires a notice of the sale to be posted in the town where the lands lie, and such has been the uniform construction by sheriffs and others. See 6 N. H. Rep. 271. The

defendants offered to show that no notice was posted in Success. If such posting was necessary, the evidence was improperly rejected.

9. It does not appear for what the land was sold. No items are given for the $32.95.

10. It does not appear what proportion of the township was sold, the record being, "the whole of the residue of said tract not paid on before sale." Mr. Hall had paid fifteen cents, but whether that was a share of tax, or of the tax and cost, does not appear.

The deed departs from the record of sale, for it conveys the whole tract, except what was paid on by Mr. Hall, he having paid fifteen cents of the tax.

Both are uncertain, and the deed is void for that.

The sale also was void for being made after the returnday of the warrant, and for a sum including $1 for the warrant.

II. The exceptions to the sale for the county tax are similar to those taken to the sale for the State tax, and also that the assessment by the county treasurer was for nine cents too much, which renders it void. 2 Greenl. 375.

III. The agreement between the plaintiff and Carlisle and Bellows, as proposed to be proved, was illegal, and would avoid the sale. *Doolin* v. *Ward,* 6 Johns. 194 ; *James* v. *Caswell,* 3 Johns. Cas. 32 ; 4 Johns. Ch. R. 254 ; 4 Conn. 717, 32 ; 8 Johns. 444 ; 1 Story Com. Eq. 290, n.

*Wells, Young & Perley,* for the plaintiff. I. 1. The defendant's argument that the authority conferred on the treasurer by the act of July 1, 1831, is repealed by the law of 1832, page 99, is unsound. The law of 1832 applies only to towns or places organized, and having selectmen or assessors, leaving the power to assess unorganized places as by the law of 1831 ; of course there is no change in the policy of the law.

By act of 1836, page 240, Success is apportioned at

twenty cents, and the second section provides that the treasurer shall issue his warrant accordingly.

2. A charter is not an act of incorporation, but subsequent legislation is necessary. The practice of incorporating townships has been universal. But the law of 1831, page 26, defines the meaning of " any place unincorporated," as being that place " having so few inhabitants as to be incapable of choosing town officers," and the case shows that Success was of that character, and it does not appear that it was ever inhabited.

The act of June, 1827, applies to towns only, and not to places unincorporated.

3. The treasurer had no authority to assess and commit to the sheriff until after December, 1840, for up to that time the proprietors had the right to report a division, which would require a several assessment; but, if not so reported, then he is to assess in one sum. Law of 1831, page 26. This is also apparent by the act of 1839, page 401, which precludes the treasurer from even issuing extents until after December 1, 1840.

4. By the act of December, 1839, page 401, forty thousand dollars shall be assessed, collected, &c., and the treasurer is directed to issue his warrant, &c., according to the apportionment of public taxes; showing, clearly, that the treasurer's warrant is to be taken as the assessment, so far as he is concerned. There is no law requiring the record of any assessment except the act of 1824, page 572, which requires all the papers to be lodged with the clerk of the superior court, and makes copies and extracts evidence in courts of law. *Foxcroft* v. *Nevins*, 4 Greenl. 72, has no application in this case.

5. Reasonable compensation should be allowed for all acts required to be done, and the practice has ever been to charge the same fees as in this case. But the question of the legality of the fees cannot affect the validity of the sale. If the sheriff or any other officer takes too much

fees, he is liable to an action for so doing; *Cardigan* v. *Page*, 6 N. H. Rep. 193; *Burnham* v. *Aikin & als.*, 6 N. H. Rep. 306; *Odiorne* v. *Mason*, 9 N. H. Rep. 30; and even under the cases referred to by defendants in Massachusetts, there can be no question but that a purchaser under those proceedings would acquire a valid title to property sold by such officers. See, also, 4 Vt. 617, *Eastman* v. *Curtis;* 7 Vt. 92, *Administrator of James* v. *Martin & al.*

6. The list was lodged by the sheriff with the deputy secretary, June 1, 1841, and returned to the sheriff September 3, 1841, as the case finds. That it remained with the deputy secretary during the interval is manifest. The list in this case is the assessment, and the assessment is contained in the warrant.

The sheriff also makes return of the facts of the delivery of copy of list and warrant to the deputy secretary, and the return to him, on application, September 3, 1841.

7. The sheriff's certificate upon the advertisement is that he posted the same in the bar-room of Joseph C. Cady, in the Coös hotel, in Lancaster, September 21, 1841, and took the same down January 4, 1842. The court will not presume that the advertisement was taken down and then put up again, but will presume that, being put up, it remained so until it was shown to be taken down January 4, 1842.

8. The copy of advertisement posted in Success, and return from the office of the clerk of the superior court, is sufficient. The plaintiff was not bound to produce Isaac Hagar to prove the correctness of the return on said advertisement.

That copies of the papers filed in the clerk's office, in pursuance of the act of 1824, are to be received as sufficient evidence, is the manifest intention of the legislature.

By the subsequent act of 1829, page 563, the collectors are required to deposit the papers relating to their proceedings with the town-clerk, and then declares that "a certi-

fied copy of said record shall be deemed sufficient evidence of those facts in any court;" and by the law of 1831, page 26, the sheriff has the same power and authority, and shall observe the same directions as collectors, &c. To say that it was the intention of the legislature to give more credit to the copy of records of collectors than sheriffs is absurd. Again, the sheriff's proceedings are equivalent to proceedings by extent. His return of sales is conclusive evidence of the performance of those requirements, and cannot be impeached except in a suit against him for a false return. 13 Me. 245; 11 East 297; 7 Greenl. 14; 2 N. H. Rep. 146.

But it was unnecessary to advertise in Success, there being neither inhabitants nor public place there. In *Cambridge* v. *Chandler*, 6 N. H. Rep. 271, it was yielded by counsel and court, that when there is no public place in a town, the posting an advertisement there is unnecessary. See, also, 3 N. H. Rep. 181, *Tidd* v. *Smith.*

9. Expenses of sale are not required by statute to be specified. *Cardigan* v. *Page*, 6 N. H. Rep. 193; 7 Vt. 96.

10. Hall is presumed to claim a portion of the land in common, though he did not designate the quantity; yet what he paid on can be ascertained, and is therefore sufficiently certain. Or, if his payment cannot avail him, it is a matter solely between him and the plaintiff. See *Cambridge* v. *Chandler*, 6 N. H. Rep. 272.

Hall's payment being made to the deputy secretary, was, of course, for the tax only, for the costs had not then accrued.

The warrant of the treasurer authorized the sheriff to proceed and collect the tax apportioned to Success. There is no law requiring a sheriff or collector to sell the lands within any particular time. See *Prescott* v. *Wright*, 6 Mass. 22; *Devoe* v. *Elliot*, 2 Caines 244; 2 H. Black 582; 7 Pick. 15; Willis 280; *Ib.* 105; 7 N. H. Rep. 581; 9 N. H. Rep. 29.

Wells v. Burbank.

II. As to the objection to the county tax, that the assessment is for too much. If so, it cannot affect the sale, not even by the case 2 Greenl. 375, cited by the defendants. See, also, 10 Mass. 118, *Colman et al.* v. *Anderson;* 1 Burr. 580.

The purchaser of land sold for taxes has a right to stand upon the record of the sale, for the correctness of which the officer is alone responsible. *Cardigan* v. *Page,* 6 N. H. Rep. 190 ; *Gifford* v. *Woodgate,* 11 East 297 ; 13 Me. 245, *Kendall* v. *White.*

The plaintiff's title dates from the sale by the sheriff. *Jackson* v. *Bull,* 1 Johns. Cases 81 ; *Brown* v. *Maine Bank,* 11 Mass. 153.

But if it were from the date of the deeds the defendants are liable. *Kittredge* v. *Woods,* 3 N. H. Rep. 506.

III. The proposition as to the agreement between the plaintiff, Bellows, and Carlisle, was too late ; and the refusal of the court to open the case is not a subject of revision in this court. But if otherwise, it constitutes no objection to the plaintiff's title.

PARKER, C. J. Success appears to be an unincorporated place. The charter, as it is called, of February 17, 1773, is a grant of the land within the limits specified, and the grantees might therefrom make partitions of the lands thereby granted. For that purpose they were *quasi* a corporation, and tracts of land thus granted are usually denominated townships. But this grant does not constitute a town within the meaning of the statutes. It confers no right upon the proprietors to exercise town privileges. Most of the grants of this character were made, as in this case, before there were any inhabitants of the lands granted. Where, by settlement, the inhabitants were numerous enough to act as a town, a special act of incorporation has usually been passed. The act of June 26, 1827, declaring the inhabitants of every town to be a

body corporate, shows that some act of incorporation besides the original grant of the lands was deemed necessary, and it was probably intended to cover cases where from some omission it might be difficult to show a special incorporation. That it cannot apply to places which have no inhabitants is very clear. The incorporation is of the inhabitants of the town or township, and not the grantees of it.

Moreover, if the grant of the lands operated as an incorporation of the grantees as a town, there would be incorporated towns, with town privileges, where there were not, and never had been, any persons who could exercise those privileges, because there were no inhabitants; and there would be no unincorporated places except the public lands, which are not taxable. Such a construction would be preposterous.

The statute of July 1, 1831, chapter 32, providing for the collection of taxes in certain cases, expressly enacts that the treasurer of the State, when any taxes are or shall be proportioned to any place unincorporated, having so few inhabitants as to be incapable of choosing town officers, shall assess the proportion of such place, and commit the same to the sheriff of the county, with a warrant under his hand and seal, empowering the sheriff to collect the same. The second section provides that unless the treasurer is certified, under the hand of the clerk of the proprietors, that such place is divided among the proprietors, with a copy of such division or partition, so as to enable him to tax the several owners of the same, he shall assess the whole in one sum.

The act to establish the proportion for the assessment of public taxes among the several towns and places in the State, passed January 13, 1837, enacted, "that of every thousand dollars of public taxes hereafter to be raised, the proportion which each town and place shall pay, and for which the treasurer of the State is hereby authorized to

Wells *v.* Burbank.

issue his warrant, shall be as follows," &c. In the list which follows, Success is set down at "twenty cents." The second section of that act directs the treasurer for the time being to issue his warrant accordingly.

The case finds that Success was uninhabited during the period in question, and no division had been certified to the treasurer.

When, then, the legislature, July 6, 1839, voted to raise forty thousand dollars for the use of the State, a very simple computation ascertained the proportion of Success to be eight dollars, and the proportion act, before cited, authorized the treasurer to issue his warrant for that sum. No formal act of assessment, aside from the warrant itself, was required, or could have been of any avail. There was no meeting to be had, no consultation necessary, no discretion to be exercised, and no circumstance to be considered, except that no certificate of a division of the township had been filed in the treasurer's office. The act to raise the sum of forty thousand dollars, and the existing proportion act, constituted a substantial assessment of the amount, to which the treasurer was required to give effect, as such, by a warrant reciting the fact, and empowering the sheriff to collect the amount. The treasurer might have entered a list of assessments upon his books. As a matter of form it would have been well. It would have shown the amount chargeable upon each town and place. But it would have added nothing to the legal effect of the acts of the legislature already cited. When the treasurer is certified by the clerk of the proprietors that the township has been divided among them, he is required, by the second section of the act of 1831, to assess the original owners according to their several interests in quantity, without regard to the quality of their lands; and as these are not of a public character, there may be more necessity of a formal assessment, showing the amount charged upon each, although, in such case, it depends upon the number

of acres, and not upon an appraised value. *Foxcroft* v. *Nevins*, 4 Greenl. 72, was a case of assessment by selectmen. Our statute regulating assessments by selectmen provides that they shall make lists of the assessments under their hands, and commit the same to the collector, with a warrant, &c. No similar provision is found relative to the assessment by the treasurer upon an unincorporated place. The statute of January 4, 1833, chapter 108, to establish the rates at which polls and estates shall be assessed, and which, in accordance with its title, regulates the rates at which polls and personal estate shall be assessed, provides for the appraisal of real estate, and prescribes the action of the selectmen and assessors, has no reference to the taxation of unincorporated places having no selectmen, and of course did not repeal the act of 1831. The first and fourth objections must therefore be overruled.

The third objection, that the tax and sale are illegal because the assessment was made after the time when the power of the treasurer to assess had terminated, cannot be sustained. It is true that the act of 1839 provides that the sum to be raised shall be assessed, collected, and paid into the treasury on or before the first of December, 1840. But this clause relating to time must be construed as directory to the officers, and not as a limitation of time after which no further proceedings could be had. Were this otherwise, a failure to collect by the time limited, or even a failure to pay the money into the treasury by that time, would suspend farther proceedings; for the act is as imperative that the money shall be paid into the treasury on or before the first of December, as it is that the assessments should thus be made. A failure to accomplish the object within the time specified might render any officer in default liable for that default, but it would not discharge the tax. This clause in the act of 1839 cannot, therefore, be construed to control and limit the general powers given

by the acts of July 1, 1831, and January 13, 1837, before cited.

It is not necessary to inquire whether the fee of one dollar for the warrant is or is not illegal. It has been settled in this State that a levy of an execution upon lands cannot be avoided for the reason that the officer has taxed illegal fees, and set off land to satisfy these fees, as well as the legal debt and costs. 6 N. H. Rep. 193, *Proprietors of Cardigan* v. *Page ;* 9 N. H. Rep. 80, *Odiorne* v. *Mason.* Similar decisions have been made elsewhere. The same principle would be equally applicable if, instead of setting off the lands to the creditor, the law had provided for the sale of it. If the title of the creditor, who had some control over the proceedings, could not be avoided for that reason, *a fortiori*, the title of a third person, who purchased under a sale by the sheriff to satisfy debt and costs, could not be. The consequences which would follow from holding levies void in such cases undoubtedly had weight in inducing courts to adopt the principle. Having been adopted, it must be applied to all cases which come fairly within it. If sales for taxes were to be held void because the collector had included within the sum for which the land was sold some fees or expenses which he was not authorized to charge, purchasers could rarely have any reasonable reliance upon a tax title. And this would be equally true if the unauthorized charge was a fee which the collector was directed by the selectmen to collect for their services in issuing the warrant. The same reason must govern this case. It is certainly not the policy of the law to discourage the collection of taxes. This disposes of the fifth exception.

The sixth objection, that it did not appear that any list of taxes was left with the deputy secretary, and that it does not appear whether the warrant of the treasurer, if that may be regarded as a list, was retained by him, as required by law, must also be overruled. The warrant

containing the assessment is a list, within the meaning of
the law. There is, and in the nature of things can be, no
better list in a case like this. The tax is comprised in a
single item, and thus in one. sense it may be said that
there is no list. But if that limited signification should
be given to the term "list," the result would be that
there was nothing which the law required should be left
with the deputy secretary, and so that there could be no
opportunity to pay the tax to him. Such a construction
would not avail the defendants, and it would be against
the manifest intention of the statute.

With respect to the other branch of this objection, that
it does not appear that the list was retained by the deputy
secretary the time required by law, so that persons inter-
ested would have an opportunity of paying the tax to him ;
there is in the case the filing of the deputy secretary that
the warrant was received June 1, 1841. The plaintiff also
relies upon a return of the sheriff, as a part of his record
of the sale, filed in the office of the clerk of this court,
setting forth that he caused a true and attested copy of the
warrant to be delivered to the deputy secretary on or
before the first day of June, 1841, and that on the third
day of September, 1841, the deputy secretary, on applica-
tion, returned to him a copy of the copy so delivered to the
deputy secretary. The plaintiff contends that this return
is not only sufficient, but that it is, under the general
principles applicable to sheriff's returns, conclusive evi-
dence that the copy of the warrant remained in the posses-
sion of the deputy secretary during the time specified.

We are by no means clear that the sheriff's return in
relation to his proceedings in the collection of taxes is
entitled to be thus regarded as evidence. There is no
such provision in the statutes. The sheriff in these pro-
ceedings is not acting as the ministerial officer of the
county, under his commission as sheriff, but, holding the
office of sheriff, he thereby becomes, under provisions of

the statutes for that purpose, collector of certain taxes. In fact, the argument of the plaintiff's counsel appears to admit that his return is to have the same effect as the return of the collector of other non-resident taxes; and the statute of July 4, 1829, section 7, does not make the collector's return generally — but only a copy of the record of his certificate under oath, that the advertisement was posted up according to law — sufficient evidence. It is not necessary to settle this question, because we are of opinion that the certificate or filing of the deputy secretary upon the copy of the warrant delivered to him, showing the time it was received, is, upon general principles, applicable to such certificates, competent evidence of the time when it was filed in his office; and it is a familiar principle of law, that a state of things once shown to exist is presumed to continue until something is shown to rebut the presumption. Thus, where a man is shown to be living at a particular date, it is presumed that his life continues until some circumstance raises a presumption of his death. 1 Greenl. Ev., sec. 41; 11 N. H. Rep. 191, *Smith* v. *Knowlton;* 3 N. H. Rep. 310, *Wheelock* v. *Hall.* The principle is broad enough to cover the case. The copy of the warrant being shown to have been placed in possession of the deputy secretary on the first of June, where it ought to remain until the first of September, the fair presumption is that it did so remain, there being no particle of evidence to lead to a contrary supposition.

The seventh exception is well taken. The evidence to show that an advertisement was posted in a public place in Lancaster, for the requisite period, is a copy from the clerk's office of the advertisement and of the certificate of the sheriff that it was posted up according to law, with a copy of the affidavit or oath of the sheriff to the truth of the certificate.

If the sheriff might make a return of his acts in the collection of the tax which would be evidence, upon the

general principles applicable to sheriffs' returns, this return would be defective, because the certificate is that the advertisement was posted according to law, which, as a return, is insufficient. There must be some statute provision, therefore, to justify its reception. The statute of December 16, 1824, after providing for the deposit of the lists and other papers containing evidence of the proceedings of the sheriff, relating to the sale of lands, in the office of the clerk of this court, and providing that the clerk shall receive and preserve the same, and certify copies, further enacts, " that copies of and extracts from the said papers, duly certified by the clerk of said court, may be used as evidence in courts of law in all cases in which the original might be used, and shall have the same force and effect that the originals would have, if used as evidence in the same cause." 1 N. H. Laws, (edition 1830) 572. But it is quite clear that an original certificate of a sheriff, that he had posted an advertisement according to law, would be entirely inadmissible as evidence, and so of no force or effect whatever. We have seen that it would not be sufficient as part of a return upon returnable process. This statute then fails to sustain the testimony. The copy of the advertisement was rightly admitted in evidence to show its contents, because the original, if produced, would have been competent evidence. But the production of the advertisement did not show that it had been duly posted up.

It has been argued that the statute of July 1, 1831, 2 N. H. Laws 26, repeals the statute of 1824, and substitutes therefor the provisions of the seventh section of the statute of July 4, 1829, 1 N. H. Laws 566, providing for the collection of taxes assessed in towns upon the unimproved lands of non-residents. But there are two objections to this argument. The first is, that the statute of 1831, in providing that the sheriff shall have the same power and authority, with respect to the taxes committed

Wells *v.* Burbank.

to him to collect, which collectors of towns have, or may from time to time by law have, with respect to the taxes of non-residents, and he shall observe the same direction as town collectors of towns are, or may from time to time be bound by law to observe, &c., makes no rules whatever in relation to the evidence of his proceedings. The other is, that by the statute of 1829 the collector is to make the deposit of his papers and certificate with the clerk of the town in which the taxes are collected. It is the town-clerk who is to make the record, and it is the copy of the town-clerk's record which is made evidence. As there was in Success not only no town-clerk, but no inhabitant, there seems to have been an insuperable difficulty in filing the certificate according to the provisions of that section, and one equally formidable against the production of such record. The statute of 1831, in the provisions cited, evidently did not contemplate any repeal of the act of 1824.

The eighth exception must be overruled. It is not necessary to settle at this time what may be a public place within the meaning of the statute. Practically it is generally supposed to mean a tavern, store, or other place where people are in the habit of resorting for the transaction of business. Perhaps a meeting-house, open from week to week for public worship, may come within the description. How we might hold in this case, if there had been a dwelling-house within the township, but no place more public, we have no occasion to inquire. As there was no inhabitant, there could be no public place. *Lex non cogit ad impossibilia.* The result is, not that the tax could not be collected because no advertisement could be posted in a public place in the township, but that it might be collected without such advertisement, if the other notices required by the statute were duly given. The evidence on this point was therefore immaterial.

The ninth objection, that it does not appear for what the land was sold, cannot avail. The tax and costs

amounted, as stated, to $33.10, of which fifteen cents were paid. The part sold was for the balance, $32.95. It was not necessary to sell separately—a part for the tax and a part for the costs. 6 N. H. Rep. 183, *Proprietors of Cardigan* v. *Page.*

The remaining objection to the sale for the State tax is equally untenable. It can be readily ascertained by computation what proportion of the township was sold. While the warrant was in the office of the deputy secretary, a " Mr. Hall, of Portsmouth," paid fifteen cents. This designation of the party who paid on his share is undoubtedly loose enough, but his identity does not seem to be material at this time. The share on which he paid is not specifically stated; but as it does not appear that he made any objection to the amount charged for the warrant, it must be intended that he paid his share of the tax and of the costs charged at that time, namely, of $9, and thus we find that he paid upon one sixtieth part. The sheriff sold all upon which the tax was not thus paid. The share on which payment was made, and the share sold, might have been described with more formality, but *id certum est,* &c.

The additional objection which has been taken to the sale for the county tax, is fatal to that sale. The assessment of a larger tax than that which is authorized, even if the excess is only nine cents, vitiates the whole proceeding. There can be no valid sale for the collection of it. The maxim, *de minimis non curat lex,* cannot save it. 2 Greenl. 375, *Huse* v. *Merriam;* 15 Mass. 144, *Libby* v. *Burnham.*

After the case was closed, by the agreement to take a verdict, neither party could claim a right to introduce further evidence. The court might, in its discretion, have opened the case for additional testimony, but we cannot revise the exercise of its discretion in refusing so to do.

<div align="right">

*Verdict set aside, and new trial.*