Cass *v.* Bellows.

## CASS *v.* BELLOWS *& a.*

Where the statute required notice of the sale of lands for taxes to be published " three weeks successively," in a particular paper, and notice was published on Saturday the 2d, Tuesday the 12th, and Tuesday the 19th days of November, the publication day of the paper having been changed from Saturday to Tuesday, after the first notice—*held*, that inasmuch as the notice was published in three successive issues of the paper, and all within three weeks, the statute had been, substantially, complied with.

Town records may be amended by the person who was in office at the time of the proceedings had, where the record is to be used as evidence in a suit in court, provided satisfactory evidence can be shown of the truth of the facts alleged.

Where the town record, in regard to the oath of office of a collector of taxes was " sworn into office," and it appeared that the town clerk was dead, and that the record was made thirty-nine years previous, and that the collector was chosen, and acted as such—*held*, that the record was competent to be submitted to the jury, as tending to show that the collector took the oath of office, as prescribed by law.

Where what is stated upon the records of a town is defective, but is sufficient to lead to the belief that a correct record might have been made, a subsequent purchaser of land sold for taxes takes his title subject to the same rights, in regard to the record, as had existed with respect to former owners.

WRIT OF ENTRY, to recover lot No. 39, in the third division of the original right of Edmund Moulton, in Northumberland, in this county. It was agreed that, at the date of the demandant's writ, the defendant, Bellows, was in possession of the lot, claiming title, and that Newton, the other defendant, was in possession as a temporary tenant of said Bellows.

The demandant had such previous title and possession of the lot as would entitle him to recover in this case, unless Bellows has title, by virtue of a vendue held by Antipas Marshall, jr., on the 11th day of January, 1817, when said Marshall, as constable and collector of Northumberland, sold said lot to Thomas Carlisle. The collector conveyed the lot to said Carlisle, and he conveyed to Josiah Bellows, 2d, and the administrator of Josiah Bellows, 2d, conveyed to the defendant, Bellows.

The demandant objected to the regularity of the proceedings and the validity of the tax title, in the following particulars:

The collector's advertisement was published in the New Hampshire Patriot and State Gazette, in papers dated Saturday, November 2d, Tuesday, November 12th, and Tuesday, November 19th, 1816. The publication day having been changed, there was an interval of a week, when no paper was issued, and the demandant contends that the law, in relation to the publication of notice, was not complied with.

At the town-meeting, held in said town of Northumberland, on the 12th day of March, 1816, said Antipas Marshall, jr. was chosen constable and collector, and the proceedings of the meeting were duly recorded; and at the close of the record in which it appears that Marshall was chosen as above named, constable and collector, is the following record: "town officers sworn into office;" and below this the record is signed "Stephen Willson, Moderator, Joseph Peverly, Town Clerk of Northumberland." Said Willson and Peverly have both deceased long since.

The demandant claims that this is no sufficient evidence that the constable and collector were duly sworn, and the defendants claim that from this record the jury may presume that the proper oath of office was administered to him by a proper officer and magistrate.

It was agreed that the above questions should be trans-

ferred to the superior court, and that upon the opinion of that court being had, either party might have the case discharged, and have a trial in the court of common pleas. And it was ordered that the questions arising upon the case be transferred to the superior court for determination.

*Burns & Fletcher, J. W. & G. C. Williams* and *Cooper*, for the plaintiff.

1.   Was the publication sufficient ?   The statute requires that the land be advertized three weeks successively.   There should be a substantial, if not a literal compliance with all the requisitions of the statute, to pass a title to land by a tax sale.   *Waldron* v. *Tuttle*, 3 N. H. Rep. 344 ; *Coit* v. *Wells*, 2 Vt. Rep. 318 ; *Cardigan* v. *Paige*, 6 N. H. Rep. 182 ; *Eastman* v. *Little*, 5 N. H. Rep. 290.

The party who sets up a title under a tax sale, must furnish the evidence to support it.   *Williams* v. *Peyton*, 4 Wheat. 77.

The evidence, in this case, offered by the defendants, instead of going to support his title, most directly and conclusively goes to defeat it.

The notice of sale should have been published three weeks, successively, but one week has intervened between the first and two last publications.   No publication was made within the week commencing November 3d and ending November 9th.   We, therefore, say there has not been a substantial compliance with the statute.

" Again, where the provisions of the statute are plain in their terms, they should be strictly complied with."   *Chase* v. *Sparhawk*, 2 Foster's Rep. 139.

No presumption can be made in favor of the defendants from the lapse of time, as possession has not followed and accompanied their title.   If the case did not find what the publication was, we might presume, in loss of all evidence, that the requisite notice was given.   The publication of the paper was through no mistake of the collector, yet that does

not excuse the omission of the essential requirement of the statute, and offers no reason why the plaintiff should be deprived of his land without due notice.

2.   There is no direct evidence from the record that the collector took the oath of office, but is rather a matter of inference that he did ; but when and by whom administered is still more uncertain ; nor does it appear what oath was administered.   It should appear what oath the collector took. *Proprietors of Cardigan* v. *Page*, 6 N. H. Rep. 191.  It should appear before whom that oath was taken.   *Powers* v. *Shepard*, 1 Foster's Rep. 60.

It may be urged that the clerk and moderator having deceased, it is a hardship to allow no other proof of the oath than their record.   This question is, perhaps, not raised by the case, but it is answered in *Cardigan* v. *Paige*, where it was decided that the return of the selectmen is the only evidence of posting of a warrant, and this though the selectmen may be dead.   This decision was founded upon reasons of public policy.

It cannot be successfully urged that the lapse of time gives any presumption of regularity in the taking of the oath, for it is not the lapse of time that is the foundation of the presumption in such cases.   It is the accompanying possession, kept up under the title, the evidence of which may be presumed lost, which can afford such a presumption.   There is no such possession in this case.

*Bellows* and *Hayward*, for the defendants.

The law of February 11, 1791, (N. H. Laws 1815, p. 274,) required " three weeks notice, by publication," &c.

The law of December 10, 1796, (N. H. Laws, 1815,) required publication three weeks successively.

We say that this does not mean that the notice shall be published at intervals of precisely one week, but published in the weekly issues of the New Hampshire Patriot.

The time of the publication is not always the date of the

paper; sometimes the actual issue is anticipated a day or so, and sometimes delayed by a fast or other holiday.

So that, in point of fact, it would often happen that the interval of actual publication would be eight or nine days. But that would not be regarded.

By law, the publication was to be in the New Hampshire Patriot, which then was a weekly paper; and the validity of the notice would not be impaired by any slight change in the time of the actual publication, whether the date was altered or not.

What was required was a publication in the weekly issues of that paper, so that a person taking it would be likely to see it in one of those numbers, issued consecutively, whether he received it or not, at intervals of precisely one week.

This was, obviously, a substantial compliance with the law. Just as much as if the interval had been two or three days less than one week.

There was no fault on the part of the collector, and he could publish nowhere else; the law was imperative to publish in the Patriot, knowing its character, and subject to the usual fluctuations, &c.

*Bachelor* v. *Bachelor*, 1 Mass. Rep. 256, holds that an interval of less than one week is a compliance with the order.

The law of 1791 required only one publication, (*Muskingum Valley Turnpike*, 13 Ohio Rep. 120,) where it was so held, in construing an order for sixty days notice.

The law of 1796 required three publications, in three successive numbers, substantially.

The law required the publication in the New Hampshire Patriot; but if the paper was not published at all, or was suspended, the requisition could not be complied with, and still the sale would be good; *Wells* v. *Burbank*, Coos county, where it was held that if there was no public place in town, notice need not be posted. The law, in regard to tax titles, is more liberally administered than formerly. The old stringent laws have been relaxed.

Cass *v.* Bellows.

2. It was competent for the jury, where the records were ancient and could not be amended, as in this case, to presume that the proceedings were correct, if nothing appeared to the contrary. *Cavis* v. *Robertson,* 9 N. H. Rep. 527 ; *Northwood* v. *Barrington,* 9 N. H. Rep. 369 ; *Gibson* v. *Bailey,* 9 N. H. Rep. 168.

EASTMAN, J. This case has been transferred to us, to obtain the opinion of this court upon two questions ; first, whether the collector's advertisement, in the New Hampshire Patriot, of the sale of the lot for taxes, was legal ; and, second, whether there was competent evidence, to be submitted to the jury, as tending to show that the collector of the town of Northumberland was duly sworn into office in the year 1816, the year in which the lot was sold. These questions we will consider in their order.

It has been settled by several decisions, in this State, that a party, relying upon a title to land acquired under a collector's sale for taxes, must show a substantial compliance with the statute under which the sale was made. *Waldron* v. *Tuttle,* 3 N. H. Rep. 340 ; *Cardigan* v. *Paige,* 6 N. H. Rep. 182. Was the publication of this advertisement a substantial compliance with the law ?

The statute of 1796, under which the advertisement of this lot was published, required the publication to be " three weeks successively," in the New Hampshire Patriot. The publications were made on the 2d, 12th and 19th of November the 2d being on Saturday, and the 12th and 19th on Tuesday of the respective weeks. All the publications were made within three weeks, but more than a week elapsed between the first and second publication. This was occasioned by a change in the publication day of the paper from Saturday to Tuesday. Had there been no change in this respect, the second and third publications would have been on the 9th and 16th, instead of the 12th and 19th. Now it is contended that by this change in the day of issuing the paper, and,

consequently, of the publication of the notice, the statute has not been complied with. It does not appear, nor is it contended that there was any fault on the part of the collector, nor, indeed, on the part of any one. The publishers of the paper deemed it for their interest or convenience to change their day of publication, and, in consequence, this advertisement was changed for three days. But we cannot suppose that the notice of the sale was not equally as extensive and general as if the paper had been published on Saturday, instead of Tuesday. It was published in three successive issues of the paper, and all who took it or were in the habit of resorting to it for information, must have had equally as effective notice of all it contained as if it had been published on Saturday, as formerly. Was there not, then, a substantial compliance with the statute, in the publication of this advertisement? We think there was, and that it should be so held.

In *Bachelor* v. *Bachelor*, 1 Mass. Rep. 256, an order was directed to be published in a newspaper three weeks successively. It so happened that the paper, in which the notice was ordered to be published, was issued semi-weekly. The notice was published first on Saturday, June 30th; second, on Saturday, July 7th; and third, on Wednesday, July 11th; and the court held the order substantially complied with, notwithstanding only three days intervened between the second and third publications. In that case, the public might very easily have been misled. Seeing the first two publications in the issues of Saturday, they would naturally look for the third in the issue of the following Saturday, and not finding it there, might conclude that it was not published. In this case, there was no chance for any such misapprehension. As soon as the paper appeared, the advertisement would also appear, and inasmuch as the publication was in the three successive issues of the paper, and those all within three weeks, we think it would be holding

the doctrine too strictly to say that this statute was not sub-
stantially complied with.

But we pass to the consideration of the second question.

In *Cardigan* v. *Paige*, 6 N. H. Rep. 182, it was held that
when a title to real estate is derived from a collector's sale,
it must appear by record that he took the oath of office by
law prescribed, otherwise the sale is void. The form of
making up the record of the town clerk, in that case, was
precisely the same as in the present, viz : " sworn into of-
fice." That record was decided to be insufficient to show
that the collector took the oath of office by law prescribed.
In regard to this decision, *Bell*, J., in *Scammon* v. *Scammon*,
8 Foster's Rep. 430, remarks that it appears to go to the
very verge of the law, and that it would not have been a
forced or unnatural construction to have held that the
words " sworn into office " imported the same thing as
" took the oath of office as by law prescribed." It will be
observed, also, that the collector was chosen in 1822, and
sold the lands in controversy in that year, and the decision
of the case was made in 1833, so that the records were com-
paratively recent. The case does not find whether the town
clerk who made the record was living at the time of the suit
or not. And no attempt was made to amend the records.
That *decision* was made upon the naked record as it stood,
and which could not be termed an ancient record.

In *Gibson* v. *Bailey & a.*, 9 N. H. Rep. 168, the general
rule was laid down that amendments of the records of towns
may be made on evidence showing the truth of the facts al-
leged, where the record is used as evidence in a suit pend-
ing in court. Such amendments must be made by the person
who was in office at the time when the proceedings were had ;
but it is not necessary that he should hold the office at the
time of making the amendment. In that case, the contro-
versy related to a tax title, and one of the questions was,
whether the collector had taken the oath of office. The en-
try on the town records, in regard to the oath, was " qualified

by Francis Chase, Esq." This was held insufficient, but the town clerk who was in office when the collector was chosen, was permitted to amend the record so as to show that he had taken the oath by law prescribed. The collector was chosen in 1823, and the case was decided in 1838. From some statements in the case, we judge that the trial was had and the amendment made in 1837, so that the amendment was permitted twelve or fifteen years after the record was made. In the course of the opinion delivered by the chief justice in that case, he remarks that it has already been settled that the records of towns may be amended, to conform to the truth of the fact. That the general rule is, that amendments of records are made with the saving of the rights of third persons, acquired since the existence of the defect. To apply this rule, however, he says, to all cases of defects in sales of land taxes, would, in effect, be very nearly denying a right to amend, as the owner of the land sold would attempt to defeat any amendment, by conveying to some friend, who would bring a suit in his behalf. It would, at least, be necessary to confine the application of the principle to cases where the land had been actually conveyed *bona fide*. But instances might exist where the purchaser, although he might not have found upon the records all that was necessary to make a formal and valid record, might have been well assured, from what he did find, that all that was necessary had, in fact, been done. And then, speaking of the record, in regard to the oath of the collector, he says, further, that although not sufficient in point of law, it would lead the mind of any one to the belief that what was requisite was probably done. And the point was decided in that case, that, where what is necessary, in the proceedings of a town, although not formally entered of record, is so far stated as to lead to the belief that a correct record might have been made, a subsequent purchaser of land sold for taxes, takes his title from the former owner, subject to the right to have the record put in form, if the truth will warrant it.

Upon the authority of this case, the records of the town of Northumberland could have been amended, so as to show that the collector took the oath of office prescribed by law, had the town clerk who was in office at the time the defective record was made, been living. But not only he, but the moderator, had both deceased before the present suit was instituted.

In *Cavis* v. *Robertson*, 9 N. H. Rep. 524, it was held that there are cases in which it may be submitted to a jury to presume from a defective record of the election of a town officer, and, from his having acted under the appointment, that the meeting was duly held, the proceedings of the town regular, and the officer duly sworn; but that this cannot be done where the proceedings are recent, and no cause is shown why the defective record cannot be amended, if the truth will warrant it. Upon this point, the same distinguished jurist who delivered the opinion in *Gibson* v. *Bailey & a.*, says we have no doubt that cases may exist in which such evidence is admissible, forming an exception to the general rule. It is well known that the earlier records of towns were very imperfect, and even at the present day, there is not that care which is desirable, in making up such records. It is settled that such records may be amended. And where, from lapse of time, it may be presumed that the officers who made the records are no longer living, or have lost a recollection of the facts, so that no amendment can be made; or where it is proved, in point of fact, that such officers have deceased, so that the records cannot be corrected, we have no doubt sound principles, as well as the necessity of the case, require that such evidence should be submitted to the jury, with *instructions that they are authorized, under such circumstances, to presume that the officer was duly elected and qualified.* Such was the case in *Northwood* v. *Barrington*, 9 N. H. Rep. 369, where the records were more than forty years old. We know, in point of

Cass *v.* Bellows.

fact, that the elections were duly and legally made much oftener than the records were formally made up.

In the case before us, the town clerk had deceased before the suit was brought. The record was defective, but showed that the collector was evidently sworn in some way. Nearly forty years had elapsed from the making of the record to the commencement of the suit, and upon the authority of the cases cited, and the principles therein stated, we think, the evidence was competent to be submitted to a jury, as tending to show the collector to have been duly elected and duly sworn.

It can make no difference whether the demandant was the proprietor of the lot at the time it was sold, or a subsequent purchaser. The record that the collector was " sworn into office," was open to all; and if he purchased with that before him, he took the title, subject to the same rights, in regard to the record, as had existed with respect to former owners. *Gibson* v. *Bailey & a.*, 9 N. H. Rep. 168. If he holds by virtue of a warrantee deed, it will be a matter between him and his grantor to settle.

The opinion of the court will be certified to the common pleas, in accordance with these views.